**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| TIFFANEE GOULD, individually and on behalf of her minor son, A.J. *et al.*, | Case No.: 1:22-cv-01861-NLH-AMD |
| Plaintiffs, | |
| v. | **Motion Date: June 21, 2022** |
| THE GUIDA-SEIBERT DAIRY COMPANY *et al.*, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO STRIKE CLASS ALLEGATIONS**

Philip A. Goldstein
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
(212) 548-2167
*pagoldstein@mcguirewoods.com*

*Attorneys for Defendant The Guida-Seibert Dairy Company*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

RELEVANT FACTS AND PROCEDURAL BACKGROUND ............................2

LEGAL STANDARD ...........................................................................................3

      A.    Federal Rule of Civil Procedure 23 ...............................................3

      B.    Federal Rule of Civil Procedure 12(f) ...........................................5

ARGUMENT .......................................................................................................7

I.     Plaintiffs' Personal Injury (and Largely Emotional Distress)
Allegations Require Individualized Determinations. ....................................8

II.    Plaintiffs' Proposed Classes Constitute Impermissible Fail-Safe
Classes. ..........................................................................................................14

III.   The Proposed Student Class Fails When This Court Cannot Certify a
Student Class That Would Comply With Federal and State Law and
Protect Each Minor's Individualized Interests. ...........................................18

CONCLUSION ...................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abby v. City of Detroit*,
    218 F.R.D. 544 (E.D. Mich. 2003) .......................................................................10

*Almond v. Janssen Pharms., Inc.*,
    337 F.R.D. 90 (E.D. Pa. 2020)...........................................................................5, 6

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................................8

*Ardino v. Lyons*,
    No. 11-848, 2011 U.S. Dist. LEXIS 143586 (D.N.J. Dec. 14, 2011) ..............6, 7

*Barabin v. ARAMARK Corp.*,
    210 F.R.D. 152 (E.D. Pa. 2002).........................................................................5, 6

*Brandner v. Abbott Labs., Inc.*,
    No. 10-3242 ........................................................................................................10

*Breeman v. Everingham*,
    704 F. App'x 78 (3d Cir. 2017) ..........................................................................13

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) .................................................................................4

*Cashatt v. Ford Motor Co.*,
    No. 3:19-cv-05886, 2021 U.S. Dist. LEXIS 56724 (W.D. Wash.
    Mar. 24, 2021)........................................................................................16, 17, 18

*Colfer v. Royal Globe Ins. Co.*,
    519 A.2d 893 (N.J. Super. Ct. App. Div. 1986) ...........................................19, 20

*Colley v. Proctor & Gamble Co.*,
    No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725 (S.D. Ohio Oct.
    4, 2016) ..........................................................................................................11, 12

*Colman v. Theranos, Inc.*,
    325 F.R.D. 629 (N.D. Cal. 2018)..........................................................................7

*Cumberland Cty. Welfare Bd. v. Rodriquez*,
    365 A.2d 723 (N.J. Super. Ct. Law Div. 1976)..................................................20

*Draper v. Cordis Corp.*,
    No. 86-481-JU, 1986 U.S. Dist. LEXIS 30985 (D. Or. Aug. 15,
    1986) ..................................................................................................................11

*Fed. Ins. Co. v. Bear Indus., Inc.*,
    No. 03-251-SLR, 2004 U.S. Dist. LEXIS 21860 (D. Del. Oct. 6,
    2004) ..................................................................................................................19

*Fitzgerald v. Newark Morning Ledger Co.*,
    267 A.2d 557 (N.J. 1970) ............................................................................19, 23

*In re Flint Water Cases*,
    No. 16-10444, 2021 U.S. Dist. LEXIS 165251 (E.D. Mich. Aug.
    31, 2021) ................................................................................................21, 22, 24

*Georgine v. Amchem Prods.*,
    83 F.3d 610 (3d Cir. 1996) ......................................................................8, 12, 14

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996)........................................................................10

*Hart v. Shelby Cty. Bd. of Educ.*,
    No. 2:13-CV-230-VEH, 2014 U.S. Dist. LEXIS 116491 (N.D. Ala.
    Aug. 21, 2014) ...................................................................................................16

*HB Gen. Corp. v. Manchester Partners*,
    95 F.3d 1185 (3d Cir. 1996) ..............................................................................19

*Henry v. St. Croix Alumina, LLC*,
    No. 1999-0036, 2008 U.S. Dist. LEXIS 43755 (D.V.I. June 3,
    2008) ...............................................................................................................9, 10

*Hojnowski v. Vans Skate Park*,
    901 A.2d 381 (N.J. 2006) ..................................................................................20

*Huegel v. City of Easton*,
No. 00-CV-5077, 2002 U.S. Dist. LEXIS 22273 (E.D. Pa. Oct. 22,
2002) ........................................................................................................... 10

*Kondratick v. Beneficial Consumer Disc. Co.*,
No. 04-4895, 2006 U.S. Dist. LEXIS 4754 (E.D. Pa. Feb. 8, 2006) ................ 16

*Loesch v. Vassiliades*,
86 A.2d 14 (N.J. Super. Ct. App. Div. 1952) ........................................... 20

*In re LTL Mgmt., LLC*,
No. 21-305589 (MBK), 2022 Bankr. LEXIS 510 (Bankr. D.N.J.
Feb. 25, 2022) ............................................................................................ 9

*Luppe v. Cheswick Generating Station*,
No. 12-929, 2015 U.S. Dist. LEXIS 9791 (W.D. Pa. Jan. 28, 2015) ............. 6, 16

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ...................................................................... 4

*Martinez v. TD Bank USA, N.A.*,
No. 15-7712(JBS/AMD), 2017 U.S. Dist. LEXIS 101979 (D.N.J.
June 30, 2017) ...................................................................................... 5, 6, 16

*Mayall v. USA Water Polo, Inc.*,
No. SACV 15-171-AG, 2015 U.S. Dist. LEXIS 188549 (C.D. Cal.
June 8, 2015) ............................................................................................. 22

*McSweeney v. Kahn*,
No. 4:05-CV-0132-HLM, 2008 U.S. Dist. LEXIS 125915 (N.D.
Ga. Apr. 25, 2008) .................................................................................... 24

*In re Mercedes-Benz Antitrust Litig.*,
213 F.R.D. 180 (D.N.J. 2003) .................................................................. 3, 4

*Messner v. Northshore Univ. Health Sys.*,
669 F.3d 802 (7th Cir. 2012) ..................................................................... 14

*Mladenov v. Wegmans Food Mkts., Inc.*,
124 F. Supp. 3d 360 (D.N.J. 2015) ............................................................ 6

*Newton v. S. Wood Piedmont Co.*,
163 F.R.D. 625 (N.D. Ga. 1995) ............................................................... 17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    208 F.R.D. 625 (W.D. Wash. 2002) ..................................................................11

*Ramsay v. Frontier, Inc.*,
    No. 19-cv-03544-CMA-NRN, 2020 U.S. Dist. LEXIS 151176 (D.
    Colo. July 30, 2020)..........................................................................................11, 12

*Rowe v. E.I. Dupont De Nemours & Co.*,
    No. 06-1810 (RMB), 2008 U.S. Dist. LEXIS 103528 (D.N.J. Dec.
    23, 2008) ........................................................................................................9, 13, 14

*Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*,
    601 F.3d 1159 (11th Cir. 2010) ...........................................................................7

*Sanders v. Johnson & Johnson, Inc.*,
    No. 03-2663 (GEB), 2006 U.S. Dist. LEXIS 35881 (D.N.J. May
    31, 2006) .........................................................................................................6, 9

*Schilling v. Kenton Cty.*,
    No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050 (E.D. Ky. Jan. 27,
    2011) .................................................................................................................16

*Scott v. District of Columbia*,
    197 F.R.D. 10 (D.D.C. 2000) ..............................................................................24

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)..........................................................................................18, 19

*Slade v. La. Power & Light Co.*,
    418 F.2d 125 (5th Cir. 1968) ...............................................................................22

*Smikle v. Coca-Cola Enters., Inc.*,
    No. 03-0431 (RBK), 2004 U.S. Dist. LEXIS 32028 (D.N.J. May
    17, 2004) .........................................................................................................6

*Smith v. Merial Ltd.*,
    No. 10-439, 2012 U.S. Dist. LEXIS 78220 (D.N.J. June 5, 2012) .....................6

*Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders
    in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
    407 F.3d 34 (2d Cir. 2005) ..................................................................................19

*In re Tainan*,
   48 B.R. 250 (Bankr. E.D. Pa. 1985) ...................................................19

*Tonka Corp. v. Rose Art Indus.*,
   836 F. Supp. 200 (D.N.J. 1993) ...........................................................5

*United States v. E. I. Du Pont De Nemours & Co.*,
   13 F.R.D. 98 (N.D. Ill. 1952) ...............................................................24

*In re Wellbutrin XL Antitrust Litig.*,
   756 F. Supp. 2d 670 (E.D. Pa. 2010) ...................................................18

*Zarichny v. Complete Payment Recovery Servs.*,
   80 F. Supp. 3d 610 (E.D. Pa. 2015) .........................................5, 6, 14, 15, 16, 18

*Zieger v. Advance Am.*,
   No. 13-1614-GMS, 2014 U.S. Dist. LEXIS 177524 (D. Del. Dec.
   29, 2014) ...............................................................................................6

**Statutes**

28 U.S.C. § 2072(b) ..................................................................................18

Rules Enabling Act .................................................1, 7, 18, 21, 23, 25

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action
   Litigation: A Pocket Guide for Judges* 6 (2005).................................4

Fed. R. Civ. P. 12 ......................................................................................5

Fed. R. Civ. P. 12(f) .............................................................................5, 25

Fed. R. Civ. P. 12(f)(1)-(2) .......................................................................5

Fed. R. Civ. P. 17 ....................................................................................24

Fed. R. Civ. P. 17(c)..................................................................18, 21, 23

Fed. R. Civ. P. 23 ...................................................................1, 3, 4, 7, 8

Fed. R. Civ. P. 23(a)............................................................................3, 5

Fed. R. Civ. P. 23(b) ................................................................5

Fed. R. Civ. P. 23(b)(3)......................................3, 4, 6, 8, 9, 10, 22

Fed. R. Civ. P. 23(c)(1) ..............................................................4

Fed. R. Civ. P. 23(c)(1)(A) ..................................................4, 5, 25

Fed. R. Civ. P. 23(d)(1)(D) .................................................5, 25

1 *McLaughlin on Class Actions* § 3:4 (18th ed. 2021) .............................5

N.J. Ct. R. 4:26-2 ..............................................................3, 20

N.J. Ct. R. 4:26-2(a) ..........................................................20, 23

N.J. Ct. R. 4:26-2(b)(1) .......................................................20, 23

N.J. Ct. R. 4:26-2(b)(2)-(4) ........................................................21

N.J. Ct. R. 4:44-3 ............................................................21, 24

*Wagstaffe Prac. Guide: Fed. Civ. P. Before Trial* § 3-IV (2022) ...................19

1 William B. Rubenstein, *Newberg on Class Actions* § 3:6 (5th ed.
    2021) ...........................................................................15

Defendant The Guida-Seibert Dairy Company ("Guida's") pursuant to Rules 12(f) and 23(a)-(b), (c)(1)(A), and (d)(1)(D) of the Federal Rules of Civil Procedure, files this memorandum in support of its Motion to Strike Class Allegations (ECF 11).

## **INTRODUCTION**

Plaintiffs' allegations are classically ill-suited for Rule 23 adjudication. Plaintiffs allege claims on behalf of two putative classes, one comprised of minor students and the other comprised of their parents or guardians. Both classes claim personal injury (mainly emotional distress) resulting from the students' ingestion of a product thought to be school milk, which instead contained diluted food-grade sanitizer. In defining their classes, Plaintiffs include only those students (and parents/legal guardians of those students) who ingested the product and suffered injury "therefrom."

Plaintiffs' class allegations are fatally deficient in three respects. First, both classes allege personal injury (mainly emotional distress) from exposure to an allegedly harmful substance—meaning that individual issues such as exposure, causation, and damages necessarily predominate. Second, both classes are impermissible fail-safe classes—they exclude those students (and parents of those students) who consumed product but were not injured. Third, because the student class seeks damages for minors, the Rules Enabling Act and New Jersey law require

1

this Court to engage in highly individualized inquiries to protect the interests of each child during the notice and opt-out phases, and at any settlement.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

Plaintiffs allege that students suffered personal injury after drinking milk "contaminated with a commercial cleaning agent" ("Product") from school milk cartons ("Incident"). (Goldstein Decl. Ex. A ("Compl.") at ¶¶ 5-10, 18, 20.) Plaintiffs allege the Product was processed by Guida's. (*Id.* ¶ 16.) As a result, Plaintiffs allege that they each "demonstrated similar physical symptoms, including, severe stomach pain and cramping, nausea, vomiting, diarrhea, and flatulence." (*Id.* ¶ 21.) Plaintiffs' Complaint is silent on any lasting or permanent physical injuries allegedly suffered by the named students after the Incident, and the named parents fail to allege any physical injuries themselves. (*Id.* ¶ 22.) Both the named parents and students allege that the Incident caused them emotional injuries. (*Id.* ¶¶ 53-58.)

Plaintiffs bring claims not only in their individual capacities, but on behalf of two putative classes. The first putative class comprises parents of affected students ("Parent Class") and is defined as:

> Parents and/or legal guardians of all students within the Camden City School District, or such other school districts within the State of New Jersey as discovery may reveal, whose children ingested milk packaged and/or processed by Defendant, THE GUIDA-SEIBERT DAIRY COMPANY, doing business as "Guida's Dairy", and whose children experienced physical symptoms or illness therefrom.

(*Id.* ¶ 26.)  The second putative class comprises affected students ("Student Class")

and is defined as:

> All students within the Camden City School District, or such other
> school districts within the State of New Jersey as discovery may reveal,
> who ingested milk packaged and/or processed by Defendant, THE
> GUIDA-SEIBET DAIRY COMPANY, doing business as "Guida's
> Dairy", and who experienced physical symptoms or illness therefrom.

(*Id.* ¶ 26.)  Both classes seek damages under Rule 23(b)(3).  (*Id.* ¶¶ 32-33, 37-38.)

Plaintiffs allege the named parents are each the "parent and legal guardian of

her minor child."  (*Id.* ¶¶ 6, 8, 10.)  Plaintiffs do not allege that they have been

appointed guardian ad litem for any member of the Student Class by a New Jersey

state court in compliance with New Jersey Court Rule 4:26-2, or otherwise.  (*See

generally id.*)

## LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 23

Rule 23 governs class certification and "sets forth a two-part scheme for class

certification.  The first part, subsection (a), states the threshold requirement for all

class actions.  The second, subsection (b), sets forth the three varieties of class

actions contemplated by the rule and the special requirements peculiar to each."  *In

re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 183 (D.N.J. 2003).  Under Rule

23(a), a plaintiff seeking class certification must satisfy the requirements of

"numerosity," "commonality," "typicality," and "adequacy."  Fed. R. Civ. P. 23(a);

*In re Mercedes-Benz*, 213 F.R.D. at 183.   Additionally, under Rule 23(b)(3), a plaintiff must show that common questions of law or fact predominate over individual issues, and that a class action would be superior to other methods for fair and efficient adjudication.   Fed. R. Civ. P. 23(b)(3); *In re Mercedes-Benz*, 213 F.R.D. at 183.

While not explicitly contained within Rule 23, "an essential prerequisite of a class action . . . is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) (collecting cases).   "The source of, or basis for, the ascertainability requirement as to a Rule 23(b)(3) class is grounded in the nature of the class-action device itself . . . [T]he ascertainability requirement takes a forward-looking view of the administration of the Rule 23(b)(3) class-action device in practice." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015).

A district court "must determine by order whether to certify the action as a class action" at "an early practicable time."   Fed. R. Civ. P. 23(c)(1)(A); *see generally* Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 6 (2005) ("The 2003 amendments to Rule 23(c)(1) give you more flexibility by allowing you to consider class certification 'at an early practicable time.'").   Finally, Rule 23 provides courts with the power to "require that the pleadings be amended to eliminate allegations about representation

of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).

**B.    Federal Rule of Civil Procedure 12(f)**

Rule 12 allows this Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Under Rule 12(f), the court may act on its own or on motion of a party.  Fed. R. Civ. P. 12(f)(1)-(2).  "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), the court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."  1 *McLaughlin on Class Actions* § 3:4 (18th ed. 2021).  In deciding a motion under Rule 12(f), courts have considerable discretion.  *Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (citation omitted).

A motion to strike class allegations is appropriate when "[n]o amount of additional class discovery will alter the conclusion" that class treatment is inappropriate.  *Martinez v. TD Bank USA, N.A.*, No. 15-7712(JBS/AMD), 2017 U.S. Dist. LEXIS 101979, at *34 (D.N.J. June 30, 2017); *see also Almond v. Janssen Pharms., Inc.*, 337 F.R.D. 90, 99 (E.D. Pa. 2020); *Zarichny v. Complete Payment Recovery Servs.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015).  Even on a defendant's motion to strike, plaintiffs retain the burden to demonstrate they satisfy the requirements of both Rule 23(a) and Rule 23(b).  *See Barabin v. ARAMARK Corp.*,

210 F.R.D. 152, 157 (E.D. Pa. 2002), *aff'd*, No. 02-8057, 2003 U.S. App. LEXIS 3532 (3d Cir. Jan. 24, 2003); *see also Smith v. Merial Ltd.*, No. 10-439, 2012 U.S. Dist. LEXIS 78220, at *14 (D.N.J. June 5, 2012).

Courts in this Circuit and District routinely grant motions to strike class allegations when no class could ever be maintained, even if the court were to allow discovery.  *See, e.g.*, *Almond*, 337 F.R.D. at 99; *Martinez*, 2017 U.S. Dist. LEXIS 101979, at *34-35; *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 371-72 (D.N.J. 2015); *Luppe v. Cheswick Generating Station*, No. 12-929, 2015 U.S. Dist. LEXIS 9791, at *6-19 (W.D. Pa. Jan. 28, 2015); *Zarichny*, 80 F. Supp. 3d at 326; *Zieger v. Advance Am.*, No. 13-1614-GMS, 2014 U.S. Dist. LEXIS 177524, at *18-19 (D. Del. Dec. 29, 2014); *Sanders v. Johnson & Johnson, Inc.*, No. 03-2663 (GEB), 2006 U.S. Dist. LEXIS 35881, at *33-34 (D.N.J. May 31, 2006); *Smikle v. Coca-Cola Enters., Inc.*, No. 03-0431 (RBK), 2004 U.S. Dist. LEXIS 32028, at *42 (D.N.J. May 17, 2004); *Barabin*, 210 F.R.D. at 157.

Indeed, in at least one instance, this Court granted a motion to strike at the pleadings stage.  *See, e.g.*, *Ardino v. Lyons*, No. 11-848 (NLH/KMW), 2011 U.S. Dist. LEXIS 143586, at *41-47 (D.N.J. Dec. 14, 2011) (Hillman, J.).  In *Ardino*, this Court held that the plaintiff could not satisfy the predominance and superiority requirements of Rule 23(b)(3), noting that the plaintiff's complaint did little more

than recite the elements of Rule 23. *Id.* at *41-46.  The same is true here, and the Court should grant the motion.

## **ARGUMENT**

This Court should strike Plaintiffs' class allegations for three reasons: 1) Plaintiffs' allege personal injuries (mainly emotional distress), which will require individualized, and indeed unique, determinations of exposure, causation, and damages; 2) Plaintiffs define their putative classes to include only individuals injured as a result of consuming the Product, thus constructing impermissible fail-safe classes; and 3) compliance with the Rules Enabling Act and New Jersey requirements to protect minors would require the appointment of guardians ad litem and make clear the predominance of individual issues.  Each of these shortcomings is fatal alone.  But taken together, no version of Plaintiffs' allegations, even with the benefit of discovery, could warrant class certification.  *See generally Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1184 (11th Cir. 2010) ("And of course, a class action containing numerous uncommon issues may quickly become unmanageable."); *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 651 (N.D. Cal. 2018) ("Thus, as a whole, the totality of factors show that class treatment is not superior to individual actions.").

I.  **Plaintiffs' Personal Injury (and Largely Emotional Distress) Allegations Require Individualized Determinations.**

Plaintiffs cannot satisfy the predominance and superiority requirements of Rule 23(b)(3) given their allegations of personal injuries, which appear overwhelmingly psychological.  As the Supreme Court made clear:

> The Advisory Committee for the 1966 revision of Rule 23, it is true, noted that "mass accident" cases are likely to present "significant questions, not only of damages but of liability and defenses of liability, . . . affecting the individuals in different ways." . . . And the Committee advised that such cases are "ordinarily not appropriate" for class treatment . . . The Committee's warning, however, continues to call for caution when individual stakes are high and disparities among class members great.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (internal citations omitted); *see also id.* (affirming Third Circuit's reversal of the district court's class certification when that certification did "not follow the [Advisory Committee's] counsel of caution").

In putative class actions alleging personal injury, "the commonality barrier is higher" when the complaint "seeks to resolve <u>all</u> issues, including noncommon issues, of liability and damages."  *Georgine v. Amchem Prods.*, 83 F.3d 610, 627 (3d Cir. 1996) (underlining in original).  In such a case, the alleged harmfulness of a common substance cannot, alone, satisfy the predominance requirement of Rule 23(b)(3); in fact, "it does not even come close."  *Id.*  As such, "a class action is not usually suitable for mass tort cases, since there typically exists too much variation

8

concerning claimants' injuries, illnesses, and related losses." *In re LTL Mgmt., LLC*, No. 21-305589 (MBK), 2022 Bankr. LEXIS 510, at *29-30 (Bankr. D.N.J. Feb. 25, 2022); *see also id.* at *29-31 (collecting cases).

When alleging personal injury damages resulting from common exposure to an allegedly harmful substance, class treatment is inappropriate under Rule 23(b)(3) because "each class member would still have to demonstrate his/her specific exposure, how that exposure has increased his/her risk of disease, and his/her corresponding need for medical [care], all of which would require medical expert testimony specific to each individual." *Rowe v. E.I. Dupont De Nemours & Co.*, No. 06-1810 (RMB), 2008 U.S. Dist. LEXIS 103528, at *64 (D.N.J. Dec. 23, 2008) (denying class certification). In making such a determination, this Court would have to take and weigh evidence as to each class member "whether prior medical conditions caused their alleged injuries," as well as "the adequacy with which their physicians performed" treatment. *Sanders v. Johnson & Johnson, Inc.*, No. 03-2663 (GEB), 2006 U.S. Dist. LEXIS 35881, at *18-19 (D.N.J. May 31, 2006) (denying class certification and granting motion to strike class allegations).

In a chemical exposure case, "each plaintiff must prove causation," including "the duration and nature of his or her exposure." *Henry v. St. Croix Alumina, LLC*, No. 1999-0036, 2008 U.S. Dist. LEXIS 43755, at *17-18 (D.V.I. June 3, 2008) (contrasting an exposure case with "mass disaster" cases like a "plane crash or plant

explosion"). Additionally, "the possibility of alternative explanations for plaintiffs' injuries is real and can be explored only in light of a given plaintiff's pre-existing medical conditions whose symptoms may have matched the injuries allegedly caused by defendants' conduct." *Id.* at *19; *see also id.* at *19-20 ("Based on plaintiffs' broad spectrum of claimed injuries, their varying levels of exposure to the differing released materials, and the myriad of potentially contributing factors, a common issue of causation does not predominate under Rule 23(b)(3).").

This marked variance among putative class members is especially apparent in cases alleging emotional distress given the highly individualized nature of any inquiry into the causation and severity of claimed psychological injury. *See, e.g.,* *Huegel v. City of Easton*, No. 00-CV-5077, 2002 U.S. Dist. LEXIS 22273, at *17 (E.D. Pa. Oct. 22, 2002); *see also Abby v. City of Detroit*, 218 F.R.D. 544, 549-50 (E.D. Mich. 2003); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 651-52 (C.D. Cal. 1996). Determining the causation and severity of psychological harm among young children would be even more fraught. *Brandner v. Abbott Labs., Inc.*, No. 10-3242 SECTION: R(3), 2012 U.S. Dist. LEXIS 7017, at *16 (E.D. La. Jan. 23, 2012) (refusing to certify class seeking emotional damages related to the ingestion of allegedly adulterated infant formula and noting that "establishing emotional damages would entail the exact type of 'mini-trials' the Fifth Circuit has cautioned against . . . Indeed, '[t]he very nature of these damages, compensating plaintiffs for

10

emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy" (citations omitted)).

Given these inherent characteristics, district courts routinely grant motions to strike putative personal injury class actions to avoid the aggregated adjudication of individualized issues like liability and damages. *See, e.g.*, *Ramsay v. Frontier, Inc.*, No. 19-cv-03544-CMA-NRN, 2020 U.S. Dist. LEXIS 151176, at *79 (D. Colo. July 30, 2020) (report and recommendation) (recommending grant of motion to strike when "these cases [were], at core, personal injury cases"); *Colley v. Proctor & Gamble Co.*, No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725, at *15-19 (S.D. Ohio Oct. 4, 2016) (accord); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 631-32 (W.D. Wash. 2002); *Draper v. Cordis Corp.*, No. 86-481-JU, 1986 U.S. Dist. LEXIS 30985, at *10 (D. Or. Aug. 15, 1986) (report and recommendation) (recommending granting motion to strike when each class member would need to prove the product "proximately caused his or her particular injury").

For instance, in *Colley*, the district court granted a motion to strike in a suit alleging personal injuries resulting from use of defendant's deodorant, in part, because the court would need to inquire about a number of individual issues, including whether and how class members were physically injured, the amount of

the product used, users' individual medical issues and sensitivities, users' prior medical conditions, and other factors unique to each individual. 2016 U.S. Dist. LEXIS 137725, at *18-19. The individualized nature of any inquiry is particularly apparent in cases alleging emotional distress. *See, e.g.*, *Ramsay*, 2020 U.S. Dist. LEXIS 151176, at *84-84, *adopted*, 2021 U.S. Dist. LEXIS 31030 (D. Colo. Feb. 19, 2021).

Plaintiffs' allegations are quintessentially the type requiring individualized determinations of both liability and damages. As to liability, while Plaintiffs allege a common cause (alleged ingestion of the Product by the minor named students), this Court's inquiry cannot end there, even if the Court were to assume that the presence of some food-grade sanitizer was harmful. *See Georgine*, 83 F.3d at 627 (holding that the harmfulness of a common substance "does not even come close" to clearing the commonality bar).

Instead, this Court will need to inquire as to every student, among other factors: a) whether the child consumed the Product; b) the amount of the Product each student consumed; c) the amount of sanitizer in each unit consumed by each individual student; d) whether each student has any pre-existing medical conditions which might mirror the effects of the alleged contaminant, or render the student more susceptible to it; e) whether each child's ingestion caused any injury; f) whether each child's alleged emotional distress might have other causes, and g) the reasonableness

of each student's alleged fear of increased disease risk.[1]  This Court would have to make these individualized determination as to each student in the putative Student Class before then having to conduct additional individualized inquiries as to every parent in the putative Parent Class.  The results of these inquiries as to one student and parent could not be extrapolated to any other. As in *Rowe*, determining Guida's liability would require each class member "demonstrate[ing] his/her specific exposure, how that exposure has increased his/her risk of disease, and his/her corresponding need for medical [care], all of which would require medical expert testimony specific to each individual." *See* 2008 U.S. Dist. LEXIS 103528, at *64.

This Court also would then need to engage in highly individualized analyses to determine each class member's alleged damages.  To do so, this Court would need to examine, among other factors: a) the nature and severity of any physical injury; b) the nature and severity of any alleged psychological injury or emotional distress; c) whether any pre-existing conditions exacerbate those physical and emotional injuries; d) whether each class member mitigated his or her damages; and e) the adequacy of any medical care received in treating those alleged physical or

---

[1] While this last factor goes to the individual nature of Plaintiffs' alleged damages, it also constitutes a requisite element of any liability determination under New Jersey law when Plaintiffs seek to satisfy the elements of a cause of action with emotional distress damages. *See Breeman v. Everingham*, 704 F. App'x 78, 86 (3d Cir. 2017); *see also* §§ II(A), II(B)(3) of Guida's contemporaneously filed memorandum in support of its motion to dismiss.  (ECF 10-1 at 9-11, 15.)

emotional injuries and their alleged permanency or need for future medical treatment.  Each of those determinations by this Court will "require medical expert testimony specific to each individual."  *See id.*

While Plaintiffs allege a single causative agent is responsible for their physical and emotional injuries, this case is not a "mass disaster" case in which a singular cause is uniform as to each putative class member.  Given the sheer number of individualized inquiries this Court must make as to each putative class member, Plaintiffs cannot clear the "higher" "commonality barrier" attendant to "personal injury damages class action[s] . . . that seek to resolve <u>all</u> issues, including noncommon issues, of liability and damages."  *See Georgine*, 83 F.3d at 627 (underlining in original).  As a result, and as district courts nationwide have done in such instances, this Court should grant this motion and strike Plaintiffs' class allegations.

## II.     Plaintiffs' Proposed Classes Constitute Impermissible Fail-Safe <u>Classes.</u>

Plaintiffs' class allegations should also be struck when, as here, their putative class definitions constitute fail-safe classes.  "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'"  *Zarichny*, 80 F. Supp. 3d at 623 (quoting *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012)).  In the "classic formulation," a fail-safe class "is one that defines its members by the plaintiff's liability -- all individuals

wronged by the defendant, in the classic formulation." *Id.* at 624.  In such cases, a defense verdict would bind no class member.  *Id.*  In other words, a fail-safe class impermissibly invites a heads-we-win, tails-you-lose scenario.  *Id.*  Because of this, fail-safe classes violate the implicit requirement that proposed classes be ascertainable.  *Id.* at 625-26; *see generally* 1 William B. Rubenstein, *Newberg on Class Actions* § 3:6 (5th ed. 2021).

Plaintiffs' putative class definitions, by their very terms, depend on the validity of each class member's claims.  Indeed, to be bound by judgments affecting the class, each putative class member must have: a) ingested the Product (or be a parent of a student who ingested the Product); **and** b) experienced physical symptoms or illness "therefrom" (or be a parent of such a student).  (*See* Compl. ¶ 26.)  More specifically, membership in the putative Parent Class requires that each individual be a "[parent] and/or legal guardian[] . . . whose children ingested milk packed and/or processed by Defendant . . . **and whose children experienced physical symptoms or illness therefrom**."  (Compl. ¶ 26 (emphasis added).)  Similarly, Plaintiffs define membership in the putative Student Class as including "[a]ll students . . . who ingested milk packaged and/or processed by Defendant . . . **and who experienced physical symptoms or illness therefrom**."  (Compl. ¶ 26 (emphasis added).)  Thus, were Guida's successful in proving that consumption of

the Product caused no injury, such a verdict would have no preclusive effect on the class.  The entire exercise would be for naught.

A number of district courts in this Circuit have granted motions to strike class allegations when the operative complaint seeks to establish fail-safe classes.  *See, e.g.*, *Martinez*, 2017 U.S. Dist. LEXIS 101979, at *32-35; *Luppe v. Cheswick Generating Station*, No. 12-929, 2015 U.S. Dist. LEXIS 9791, at *8-13 (W.D. Pa. Jan. 28, 2015); *Zarichny*, 80 F. Supp. 3d at 624-26; *see generally Kondratick v. Beneficial Consumer Disc. Co.*, No. 04-4895, 2006 U.S. Dist. LEXIS 4754, at *19-28 (E.D. Pa. Feb. 8, 2006) (denying class certification when mini-hearings on the merits would be required to determine class membership).  These decisions from this Circuit are hardly unique.  *See, e.g.*, *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886, 2021 U.S. Dist. LEXIS 56724, at *7-9 (W.D. Wash. Mar. 24, 2021) (striking fail-safe class allegations where members required both driving the vehicle at issue and suffering an injury from carbon monoxide); *Schilling v. Kenton Cty.*, No. 10-143-DLB, 2011 U.S. Dist. LEXIS 8050, at *18-19 (E.D. Ky. Jan. 27, 2011) (dismissing fail-safe class requiring a determination that each class member received deficient medical care or suffered physical or mental abuse); *see generally Hart v. Shelby Cty. Bd. of Educ.*, No. 2:13-CV-230-VEH, 2014 U.S. Dist. LEXIS 116491, at *16-20 (N.D. Ala. Aug. 21, 2014) (denying class certification of fail-safe class requiring determination that each class member suffered injury from alleged sexual

molestation or harassment); *Newton v. S. Wood Piedmont Co.*, 163 F.R.D. 625, 630

(N.D. Ga. 1995) ("An assessment of a claimant's likelihood of success on the merits

generally is an improper basis for ruling upon class certification."), *aff'd*, No. 95-

9346, 1996 U.S. App. LEXIS 20147 (11th Cir. 1996).

As the court in *Cashatt* held in striking the fail-safe class allegations:

> Exposure to carbon monoxide does not necessarily result in injury. . .
> Assuming, *arguendo*, that the class is comprised of individuals who
> have been "injured" from carbon monoxide, the class would fall into
> the category of an impermissible fail-safe class. This is because injury
> and causation are elements that must be established and which go to the
> question of liability; they are therefore not appropriate as part of the
> definition of the class.

2021 U.S. Dist. LEXIS 56724, at * 7-8.

Plaintiffs' class definitions exclude from membership students (and their

parents) who ingested the Product, but did not experience "physical sickness or

illness therefrom." Here, Plaintiffs fail to allege (nor, can they) that any ingestion

of a diluted food-grade sanitizer, at any concentration and in any amount,

definitively, and in all cases, results in "physical symptoms or illness therefrom."

As a result, in defining their putative classes, Plaintiffs have excluded those students

(and their parents) who consumed the Product, but who did not experience "physical

symptoms or illness therefrom." As in *Cashatt*, Plaintiffs' proposed classes

constitute impermissible fail-safe classes because "injury and causation are elements

that must be established [for membership] and which go to the question of liability."

*See* 2021 U.S. Dist. LEXIS 56724, at * 7-8.   Instead, Plaintiffs' putative class definitions are the "classic formulation" of a fail-safe class that "depend[] on whether the person has a valid claim." *Zarichny*, 80 F. Supp. 3d at 623.   The Court should grant the Motion to Strike.

### III.   The Proposed Student Class Fails When This Court Cannot Certify a Student Class That Would Comply With Federal and State Law and <u>Protect Each Minor's Individualized Interests.</u>

Finally, this Court should strike the class allegations where, as here, Plaintiffs have failed to allege a class mechanism that would comply with the Rules Enabling Act and New Jersey law such that it would protect each minor student's individualized interests.   Each named parent seeks to represent her child's interests pursuant to Rule 17(c), which allows for a "general guardian" to sue on behalf of a "minor or incompetent person."   Fed. R. Civ. P. 17(c).   The Complaint identifies no individual serving as guardian for absent class members.   This, in both regards, is impermissible.   The Rules Enabling Act, 28 U.S.C. §§ 2071 *et seq.*, states that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right."   28 U.S.C. § 2072(b).   A district court may not impose a federal procedural rule in place of a state law that is "so intertwined" with the substantive cause of action as to define the scope of the right.   *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 422-23 (2010) (Stevens, J., concurring); *see also In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 673-

75 (E.D. Pa. 2010) (analyzing *Shady Grove*, collecting cases, and explaining why Justice Stevens' concurrence represents controlling authority over the lower courts).

In the Third Circuit, the right to bring a diversity case is a substantive matter to be determined by reference to the relevant state court law.  *See, e.g.*, *HB Gen. Corp. v. Manchester Partners*, 95 F.3d 1185, 1196-97 (3d Cir. 1996) (holding that the real party in interest rule should be determined under the governing substantive law); *Fed. Ins. Co. v. Bear Indus., Inc.*, No. 03-251-SLR, 2004 U.S. Dist. LEXIS 21860, at *5-6 (D. Del. Oct. 6, 2004); *In re Tainan*, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) ("Whether a plaintiff is the real party in interest is to be determined by reference to the applicable substantive state law."); *see also Stichting Ter Behartiging Van De Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 46-47 (2d Cir. 2005) (looking to New Jersey state law to determine legal right to bring claim); *see generally Wagstaffe Prac. Guide: Fed. Civ. P. Before Trial* § 3-IV (2022) ("In a diversity action, state law determines the issue of who can sue or be sued, and who is a real party in interest.").

Under New Jersey law, a "parent or appointed guardian cannot dispose of a child's cause of action without statutory authority or judicial approval."  *Colfer v. Royal Globe Ins. Co.*, 519 A.2d 893, 377 (N.J. Super. Ct. App. Div. 1986) (collecting cases).  "A parent has no authority unless he has been appointed guardian to compromise or release claims or causes of action belonging to the child." *Fitzgerald*

*v. Newark Morning Ledger Co.*, 267 A.2d 557, 558 (N.J. 1970).  In New Jersey, "after a minor has suffered a tortious injury, a minor's parent or guardian may not dispose of a minor's existing cause of action without statutory or judicial approval . . . That *Rule* applies regardless of whether suit has been filed on the minor's behalf." *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 334 (N.J. 2006) (collecting cases); *see also Loesch v. Vassiliades*, 86 A.2d 14, 15 (N.J. Super. Ct. App. Div. 1952).  "The purpose of the rule is not only to guard a minor against an improvident compromise but also to secure the minor against dissipation of the proceeds."  *Colfer*, 519 A.2d at 378; *Cumberland Cty. Welfare Bd. v. Rodriquez*, 365 A.2d 723, 730-31 (N.J. Super. Ct. Law Div. 1976) (noting that the interests of parents and their children in potential funds at issue may diverge).

Under New Jersey procedural law, the ability of a parent or guardian to bring a cause of action on behalf of a minor child is governed by New Jersey Court Rule 4:26-2.  If no guardian has been appointed by a New Jersey court, a guardian ad litem must be appointed by the court in conformity with the Rule.  N.J. Ct. R. 4:26-2(a).  In a negligence action, a parent of a minor may be appointed guardian ad litem without court order "upon the filing of a pleading or certificate signed by an attorney stating the parental relationship, the child's status, and, if a minor, the age, the parent's consent to act as guardian ad litem and the absence of a conflict of interest between parent and child."  N.J. Ct. R. 4:26-2(b)(1).  If a parent cannot proceed

20

under subsection (b)(1) (relevant, for instance, if the parent and minor child have a conflict of interests in the litigation), a guardian ad litem may be established via petition, a party's motion, or on the court's motion.  N.J. Ct. R. 4:26-2(b)(2)-(4). Additionally, under New Jersey's procedural rules, a guardian ad litem cannot settle a matter on behalf of a minor child without court approval.  N.J. Ct. R. 4:44-3.  In such a hearing, the court must specifically "determine whether the settlement is fair and reasonable as to its amount and terms."  *Id.*

The court in *In re Flint Water Cases*, No. 16-10444, 2021 U.S. Dist. LEXIS 165251 (E.D. Mich. Aug. 31, 2021), addressed substantively identical issues as those that would confront this Court at the class certification stage.  First, the court found that the Rules Enabling Act required application of Michigan's substantive law, and not Rule 17(c), and that, like New Jersey, Michigan required individual scrutiny on a parent's ability to bring and settle claims on behalf of his or her minor child.  *Id.* at \*96-103.  Indeed, the court held that "[c]ertification of the Minors Damages Subclass would violate the Rules Enabling Act by abridging the substantive protections that Michigan law provides regarding the minors' ability to bring, settle, and abrogate their claims."  *Id.* at \*103.

Because the plaintiffs had never adhered to Michigan's procedures for appointment of a guardian ad litem, the court held that it would need to conduct an individual inquiry to determine "the most suitable representative for each minor

child and formally appoint that person." *Id.* at \*104.  Having done that, to settle any claims on behalf of a minor child, the court held that it would also have to individually determine that the settlement was in the best interest of each minor child.  *Id.* at \*100-01.  Finally, the court noted that, because a parent could not bind a minor to a release absent strict court oversight (or statutory authority), absent individualized court review, any minor subject to a class settlement could repudiate the agreement and pursue his or her claim, evading the preclusion normally attendant to a class settlement.  *Id.* at \*108-09.  Because the plaintiffs could not certify a class of minors while appropriately protecting those minors' individualized interests, the court held that the proposed Rule 23(b)(3) class was impermissible.  *Id.* at \*109; *see also Slade v. La. Power & Light Co.*, 418 F.2d 125, 126-27 (5th Cir. 1968) (holding minors' guardian could not sue on their behalf in federal court if the guardian could not bring suit in the situs state's courts), *cert. denied*, 397 U.S. 1007 (1970); *Mayall v. USA Water Polo, Inc.*, No. SACV 15-171-AG (RNBx), 2015 U.S. Dist. LEXIS 188549, at \*5-8 (C.D. Cal. June 8, 2015).[2]

---

[2] The *Flint Water* court also noted that "[w]ere the Minor Damages and Injunctive Subclass not impermissible on other federal and state law grounds," each minor would need to introduce his or her own evidence on exposure and medical testing, to which defendants could submit individualized medical and expert evidence in response to but-for causation, demonstrating the absence of predominance.  *Id.* at \*144 n.31.

The Student Class imposes nearly identical (and insurmountable) hurdles.  To start, application of Rule 17(c) would violate the Rules Enabling Act by abridging the minor students' rights and by enlarging their parents' rights under New Jersey law.  While Plaintiffs allege that each named parent is the "parent and legal guardian" of each named minor student, (*see* Compl. ¶¶ 6, 8, 10), such status does not automatically make each parent a guardian ad litem under New Jersey law authorized to bring suit on a minor's behalf.  Instead, regardless of each parents' status otherwise as a parent and guardian of his or her minor child, Rule 4:26-2(a) requires that they be appointed as a guardian by a New Jersey state court.

Plaintiffs' Complaint lacks any allegation that any named parent has complied with Rule 4:26-2(a) and been appointed a guardian ad litem by a New Jersey court for her own child, much less the children of others in Plaintiffs' putative class.  As a result, to prosecute this Complaint, this Court would have to conduct an individualized analysis as to each minor student in the putative Student Class to comply with New Jersey law and the Rules Enabling Act.  Such an individualized inquiry would be made even more difficult where, as here, the named parents are also plaintiffs in their individual capacities and allege their own (emotional only) damages, requiring the Court to determine whether a conflict of interest may well exist between the parents and their minor children under Rule 4:26-2(b)(1).  *See, e.g.*, *Fitzgerald*, 267 A.2d at 559 (holding a settlement agreement on behalf of a

father and his minor son personally enriched the father at the expense of the son's rights and "placed the father's personal interest in a position antagonistic to his duty towards the infant. A true conflict arose after the alleged injury to the minor.").[3]

Even if this Court somehow resolved this issue by appointing an individual guardian ad litem for each putative Student Class member, this Court would then have to engage in an unwieldy and highly individualized inquiry about notice, opt-outs, and if Plaintiffs ever sought to settle the Student Class's claims.  As in *Flint Water*, to comply with New Jersey's Rule 4:44-3, this Court would need to conduct an individualized inquiry to determine whether the settlement is "fair and reasonable as to its amount and terms" as to each student.  Without doing this, not only could this Court not comply with New Jersey law and release the Student Class's claims, but, as the *Flint Water* court found, any minor class member would be free to

---

[3] Even if this Court decided to conduct its analysis under Rule 17, it still would need to determine on an individualized basis whether a conflict between each and every parent and each and every minor child exists, especially in an instance where the named parents are also parties to the action and have potentially divergent financial interests. *See, e.g.*, *McSweeney v. Kahn*, No. 4:05-CV-0132-HLM, 2008 U.S. Dist. LEXIS 125915, at *4-5 (N.D. Ga. Apr. 25, 2008) (holding a potential conflict existed when the parent was obligated to pay attorneys' fees, while the minor was not, and "[t]hat obligation might influence [the parent's] desire to settle this case for a higher sum than the minor Plaintiffs, independently represented, might be willing to accept"); *Scott v. District of Columbia*, 197 F.R.D. 10, 11 (D.D.C. 2000) (accord); *United States v. E. I. Du Pont De Nemours & Co.*, 13 F.R.D. 98, 105 (N.D. Ill. 1952) ("Because of the nature and scope of this litigation, the court is concerned that conflict in interests will develop and that adequate defense and the best interests of the minor defendants will require that they have independent representation.").

repudiate the class settlement and relitigate his or her individual claims.  Clearly, then, to fully comply with the Rules Enabling Act and New Jersey law on the prosecution and release of the Student Class's claims, this Court would need to engage in a highly specific, individualized inquiry into each minor student at the notice stage, for any opt-out, and in the event of any settlement.  With such requirements, individual issues would predominate, class adjudication is not superior, and this Court should therefore strike the class allegations.

## CONCLUSION

Defendant, The Guida-Seibert Dairy Company, requests that this Court grant its instant motion, strike Plaintiffs' class allegations under Rules 23(c)(1)(A), (d)(1)(D), and 12(f), and grant all such further relief as this Court deems just and proper.

Dated: May 23, 2022    Respectfully Submitted,

            */s/ Philip A. Goldstein*
            Philip A. Goldstein
            MCGUIREWOODS LLP
            1251 Avenue of the Americas, 20th Floor
            New York, NY 10020-1104
            Telephone:  (212) 548-2167
            Email: pagoldstein@mcguirewoods.com

            *Attorneys for Defendant The Guida-Seibert Dairy Company*