**IN THE UNITED STATES DISTICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TIFFANNEE GOULD, individually and on behalf of her minor son, A.J. *et al.*, | Case No. 1:22-cv-01861-NLH-AMD |
| *Plaintiffs*, | CLASS ACTION |
| v. | Motion Return Date: 07/18/2022 |
| THE GUIDA-SEIBERT DAIRY CO. *et al*, |  |
| *Defendants*. |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**LENTO LAW GROUP, P.C.**
3000 Atrium Way – Suite 200
Mt. Laurel, NJ 08054
(856) 652-2000 (T)
(856) 375-1010 (F)

**BY: Samuel D. Jackson, Esquire**
Atty ID: 130452017
sdjackson@lentolawgroup.com
**BY: Joseph D. Lento, Esquire**
Atty ID: 013252008
jdlento@lentolawgroup.com

**ON THE BRIEF**
**BY: John A. Fonte, Esquire**
Atty ID: 207102016
jafonte@lentolawgroup.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................ 2

INTRODUCTION....................................................... 5

STATEMENT OF FACTS................................................ 11

STANDARD OF LAW................................................... 11

LEGAL ARGUMENT.................................................... 12

I.    THE INCLUSION OF A CLAIM UNDER THE NJPLA (COUNT II) DOES NOT
      *PER SE* PRECLUDE PLAINTIFFS' CLAIMS OF NEGLIGENCE (COUNT I)
      AND NIED (COUNT III), AS OTHER CAUSES OF ACTION MAY BE PLEADED
      IN THE ALTERNATIVE PURSUANT TO FRCP 8(d)(2) and (3)...... 13

II.   WHETHER THE CLASS HAS EXPERIENCED THE REQUISITE LEVEL OF
      SEVERITY OF HARM FOR A DIRECT OR INDIRECT NIED CLAIM IS A
      QUESTION OF FACT AND THERFORE SHOULD NOT BE DISMISSED UNDER
      FRCP 12(b)(6)................................................ 21

      A.   PLAINTIFFS ARE NOT REQUIRED TO DETAIL SPECIFIC
           MANIFIESTATIONS OF EMOTIONAL DISTRESS IN THEIR
           COMPLAINT, AND SUCH FACT-SPECIFIC QUESTIONS SHOULD
           EXAMINED IN THE NORMAL COURSE OF DISCOVERY.......... 22

      B.   THE STUDENT CLASS HAS ADEQUATELY PLEADED THE ELEMENTS OF
           A DIRECT CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL
           DISTRESS (COUNT III)............................... 23

      C.   THE PARENT CLASS HAS ADEQUATELY PLEADED THE ELEMENTS OF
           AN INDIRECT CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL
           DISTRESS (COUNT III)............................... 23

      D.   ASSUMING ARGUENDO THAT THESE FACTS HAVE NOT BEEN
           ADEQUATELY PLEADED, PLAINTIFFS CAN READILY CORRECT ANY
           FACTUAL DEFICIENCIES WITH LEAVE TO AMEND THE
           COMPLAINT.......................................... 23

III.  WHETHER THE ACTIONS AND CONDUCT OF DEFENDANT CONSTITUTED THE
      REQUISITE LEVEL OF WANTONNESS AND RECKLESSNESS NECESSARY FOR
      PUNITIVE DAMAGES IS A QUESTION OF FACT AND THEREFORE SHOULD
      NOT BE DISMISSED UNDER FRCP 12(b)...................... 21

      A.   PLAINTIFFS ADEQUATELY PLEADED FACTS THAT SUPPORT A CLAIM
           FOR PUNITIVE DAMAGES (IN PRAYER FOR RELIEF)........ 22

      B.   ASSUMING ARGUENDO THAT THESE FACTS HAVE NOT BEEN
           ADEQUATELY PLEADED, PLAINTIFFS CAN READILY CORRECT ANY
           FACTUAL DEFICIENCIES WITH LEAVE TO AMEND THE COMPLAINT
           .................................................. 23

CONCLUSION ........................................................ 26

## TABLE OF AUTHORITIES

### CASES

*Abouzaid v. Manscard Gardens Assocs., LLC*, 207 N.J. 67, 23, A.3d 388 (N.J. 2011) .................................................19

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ...............14, 16

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) .........9, 10, 25, 26

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................14, 15

*Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976) ......10, 25

*Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 544 A.2d 857 (N.J. 1988) .................................................17

*Caputo v. Nice-Pak Prods, Inc.*, 300 N.J. Super. 498, 693 A.2d 494 (N.J. Super. Ct. App. Div. 1997) ...............................12

*Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F.Supp.3d 586 (D.N.J. 2015) ........................................................12

*Cornell & Co., Inc. v. Occupational Health & Safety Review Comm'n*, 573 F.2d 820 (3d Cir. 1978) ...................................26

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001) ........................................................25

*Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 561 A.2d 1122 (N.J. 1989) .................................................19-20

*Dillon v. Legg*, 441 P.2d 912 (Cal. 1968)) .......................22

*Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339 (3d Cir. 1982) ........................................................10

*Estate of Leon Spear v. Comm'r of IRS*, 41 F.3d 103 (3d. Cir. 1994) ........................................................10

2

*Estate of Smith v. Riley*, 2016 WL 3398454 (D.N.J. Jun. 15, 2016) .15

*Foman v. Davis*, 371 U.S. 178 (1962) ...............................25

*Frame v. Kothari*, 115 N.J. 638, 560 A.2d 675 (N.J. 1989) ........17

*Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986) ...................15

*Gendek v. Poblete*, 139 N.J. 291, 654 A.2d 970 (1995) ........16, 19

*Giordano v. Solvay Specialty Polymers, USA, LLC*, 522 F.Supp.3d 26, (D.N.J. 2022) ...............................................28

*Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F.Supp. 1100 (D.N.J. 1991) ......................................................9

*Gutman v. Howard Sav. Bank*, 748 F.Supp. 254 (D.N.J. 1990) ........9

*Hassoun v. Cimmino*, 126 F.Supp.2d 353 (D.N.J. 2000) ..............28

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419 (3d Cir. 1981) ....................26

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ....................9

*Hottenstein v. City of Sea Isle City*, 977 F.Supp.2d 353 (D.N.J. 2013) .........................................................28

*Howze v. Jones & Laughlin*, 750 F.2d 1208 (3d Cir. 1984) .........25

*ICON Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473 (3d Cir. 1987) ......................................................10

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ......................................................26

*In re Lead Paint Litig.*, 191 N.J. 405 (N.J. 2007) ...............12

*Innes v. Marzano-Lesnevich*, 435 N.J. Super. 198, 87 A.3d 775 (N.J. Super. Ct. App. Div. 2014), *aff'd*, 224 N.J. 584, 136 A.3d 108 (N.J. 2016) ......................................................17

*Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004) ..................25, 27

*Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F.Supp. 1035 (D.N.J. 1990) ...........................................17

*Marina Dist. Dev. Co., LLC v. Ivey*, 93 F.Supp.3d 327 (D.N.J. 2015) ........................................................12

*Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 106 F.Supp. 2d 737 (D.N.J. 2000) ........................................................26

*Nix v. Welch & White, P.A.*, 55 Fed. App'x 71 (3d Cir. 2003) ......10

*Panarello v. City of Vineland*, 150 F.Supp.3d 734 (D.N.J. 2016) ...19

*Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 105 F.Supp. 2d 761 (D.N.J. 2000) ...............................26

*Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (N.J. 1980) .......22, 23

*Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F.Supp.3d 462 (D.N.J. 2019) .......................................................17

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...........................9

*Schuylkill Energy Resources v. PP & L*, 113 F.3d 405 (3d Cir. 1997) 9

*Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000) .................10, 25

*Smith v. NCAA*, 139 F.3d 180 (3d Cir. 1998), *rev'd on other grounds*, 525 U.S. 459 (1999) ...........................................26

*Smith v. Whitaker*, 160 N.J. 221, 734 A.2d 243 (N.J. 1999) .......28

*Spellman v. Express Dynamics, LLC*, 150 F.Supp.3d 378 (D.N.J. 2015) ........................................................12

*Sporn v. Ocean Colony Condominium Ass'n*, 173 F.Supp.3d 244 (D.N.J. 2001) ...................................................16, 19

*Strike 3 Holdings, LLC v. Doe*, 2020 WL 3567282 (D.N.J. Jun. 30, 2020)

  (slip. op.) ..................................................14

*Veggian v. Camden Bd. of Educ.*, 600 F.Supp.2d 615 (D.N.J. 2009) ..17

*Watts v. Internal Rev. Serv.*, 925 F.Supp. 271 (D.N.J. 1996) .......9

*Williamson v. Waldman*, 150 N.J. 232, 696 A.2d 14 (N.J. 1997) .....17

### STATUTES

<u>N.J.S.A.</u> §§ 2A:15-5.9 *et seq.* (The "New Jersey Punitive Damages Act")

  ...........................................................29

<u>N.J.S.A.</u> § 2A:15-5.12(a) .........................................29

<u>N.J.S.A.</u> § 2A:15-5.12(b) .........................................29

<u>N.J.S.A.</u> §§ 2A:58C-1 *et seq.* (The "New Jersey Products Liability Act")

  ......................................................6, 11

### COURT RULES

Fed. R. Civ. P. 8(d) ...............................11, 12, 13

Fed. R. Civ. P. 8(e) ...............................12

Fed. R. Civ. P. 12(b)(6) .........................6, 7, 8, 9, 18, 26

Fed. R. Civ. P. 15(a) ...........................................24

Fed. R. Civ. P. 23 .............................................8

### OTHER AUTHORITIES

Restatement (Second) of Torts (1965) ............................17

Plaintiffs, Tiffanee Gould, individually and on behalf of her son, A.J., Dominique Wilson, individually and on behalf of her daughter, A.J., Deborah Pollitt, individually and on behalf of her daughter, D.P., and on behalf of all those similarly situated that comprise the Class of plaintiffs (collectively, the "Plaintiffs"), hereby submit the following Memorandum of Law in opposition to Defendant The Guida-Seibert Dairy Company's Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## **INTRODUCTION**

This matter is a product liability action involving two Classes that comprise the Class of Plaintiffs – the "Student Class", which consists of minor individuals, and the "Parent Class", which consists of the parents and legal guardians of those in the Student Class. In Plaintiffs' April 1, 2022 Complaint, Plaintiffs assert the following claims against Defendant, The Guida-Seibert Dairy Company d/b/a "Guida's Dairy" (hereinafter, "Defendant"): Negligence (Count I); Violation of the New Jersey Products Liability Act, N.J.S.A. §§ 2A:58C-1 *et seq.* (Count II); and Negligent Infliction of Emotional Distress ("NIED") (Count III). As part of Plaintiffs' prayer for relief, Plaintiffs seek an award of, *inter alia*, punitive damages for Defendant's actions and conduct. *See Compl.*, pp.12-13, Part VI. With the exception of Count II as it applies to the Student Class, Defendant's motion seeks to

dismiss all of the foregoing with prejudice pursuant to Fed R. Civ. P. 12(b)(6).

As set forth more fully herein, Plaintiffs have satisfied all pleading requirements in this early stage of litigation. Defendant seeks to dismiss highly fact-sensitive claims based on fact-sensitive bases, such as, for example, that the harms asserted are not sufficient to support a claim of NIED, or that the asserted conduct of Defendant is not wanton or reckless enough to support a claim of punitive damages. As it currently stands, discovery is needed to ascertain the exact degree of physical and emotional harm sustained by Plaintiffs, or the exact level of culpability of Defendant, thus making arguments to dismiss these claims premature.

Because these are fact-sensitive arguments, in the event that this Court agrees that some of the elements of claims have not been adequately articulated, Plaintiffs would respectfully request leave to amend the Complaint in lieu of a drastic dismissal with prejudice.

## STATEMENT OF MATERIAL FACTS

Members of the Student Class are minors who attend schools within the Camden City School District. *Compl.*, ¶ 13. Through a third-party food provider, the Camden City School District receives milk from Defendant. *Id.*, ¶ 15. Defendant processes the milk and distributes it through the stream of commerce. *Id.*, ¶ 16.

On or about March 30, 2022, the Camden City School District began reaching out to members of the Parent Class, informing them that contaminated milk had potentially been consumed by members of the Student Class. *Id.*, ¶¶ 17-18. It was later determined that the contamination was due to commercial cleaning agents, either Vortex and/or Vortexx, being found in the milk. *Id.*, ¶ 20. School employees had observed that those students who consumed the milk had exhibited physical symptoms, including severe stomach pain, cramps, nausea, vomiting, diarrhea, and flatulence. *Id.*, ¶¶ 18, 21. For at least some of the members of the Student Class, some of these physical symptoms persist. *Id.*, ¶ 22.

Plaintiffs filed the subject Class Action lawsuit against Defendant for harms stemming from the contaminated milk. Plaintiffs pleaded all necessary facts to establish the two Classes that comprise the Plaintiff-Class pursuant to Fed R. Civ. P. 23. *See id.*, ¶¶ 26-38.

## STANDARD OF LAW

Defendant moves to dismiss the Complaint with prejudice for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). The motion should be denied as Plaintiffs have adequately pleaded facts for all causes of action to justify relief under the law.

Pursuant to this Rule, a complaint may be dismissed if, accepting all plaintiff's allegations and the reasonable inferences to be drawn from them, no relief could be granted under

any set of facts to be proved. *Watts v. Internal Rev. Serv.*, 925 F.Supp. 271, 275 (D.N.J. 1996); *see also Glenside W. Corp. v. Exxon Co., U.S.A.*, 761 F.Supp. 1100, 1107 (D.N.J. 1991) (indicating that the Court's acceptance of any and all reasonable inferences is mandatory); *Gutman v. Howard Sav. Bank*, 748 F.Supp. 254, 260 (D.N.J. 1990) (same). The only things that may not be considered are unsupported conclusions, unwarranted inferences, and the like. *Schuylkill Energy Resources v. PP & L*, 113 F.3d 405, 417 (3d Cir. 1997).

In considering the motion, the Court must read the complaint indulgently in favor of the plaintiff; a Rule 12(b)(6) motion must be denied unless in the limited circumstance that "it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (emphasis added); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (requiring a complaint to have an "actual, actionable claim" underlying the factual allegations).

Even if the plaintiff has failed to supply adequate allegations to articulate claims that would entitle him to relief, dismissal with prejudice has been considered an abuse of discretion. *Alvin v. Suzuki*, 227 F.3d 107, 122-23 (3d Cir. 2000) (reversing the dismissal of claims with prejudice in favor of amendment of the pleading, while affirming the dismissal of those

claims without prejudice). *Alvin* echoed the longstanding rule that dismissal with prejudice is a "severe and disfavored remedy." *Id.* at 122 (citing *Estate of Leon Spear v. Comm'r of IRS*, 41 F.3d 103, 111 (3d. Cir. 1994); *ICON Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 477 (3d Cir. 1987); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982)).

The more appropriate court action is to grant leave to the plaintiff to amend the complaint, even if not explicitly requested, if the leave to amend would cure any deficiencies. *Nix v. Welch & White, P.A.*, 55 Fed. App'x 71, 73 (3d Cir. 2003) (reversing a 12(b)(6) dismissal as an abuse of discretion for not providing the plaintiff with an opportunity to amend the complaint, even though the plaintiff did not request this, did not file a motion for leave therefor, and had seven months elapse between the motion to dismiss and the order granting the motion) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000); *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976)). *Shane* and *Borelli* even *require* that before a court dismisses a claim, it must provide and expressly state the specific period of time in which the plaintiff has leave to amend. 213 F.3d at 116; 532 F.2d at 951 n. 1.

Here, Plaintiffs respectfully submit that when affording all favorable inferences to Plaintiffs as part of an indulgent and liberal reading of the Complaint, Plaintiffs have asserted facts that sufficiently state claims upon which relief can be granted.

However, in the event that this Court is still inclined to grant Defendant's motion, it is respectfully requested that the Court afford Plaintiffs with an opportunity to file an amended complaint, consistent with controlling case law.

**LEGAL ARGUMENT**

Defendant's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be denied as Plaintiffs have adequately pleaded facts that support its claims of negligence (Count I), violations of the NJPLA (Count II), and both indirect and direct negligent infliction of emotional distress (Count III). Alternatively, Plaintiffs are entitled to leave to amend if the Court grants the motion.

**I.   THE INCLUSION OF A CLAIM UNDER THE NJPLA (COUNT II) DOES NOT _PER SE_ PRECLUDE PLAINTIFFS' CLAIMS OF NEGLIGENCE (COUNT I) AND NIED (COUNT III), AS OTHER CAUSES OF ACTION MAY BE PLEADED IN THE ALTERNATIVE PURSUANT TO FRCP 8(d)(2) and (3).**

In response to Defendant's first argument, while the claim of violations of the New Jersey Products Liability Act, N.J.S.A. §§ 2A:58C-1 _et seq._, may subsume certain common law claims, dismissal with prejudice at this early stage is inapposite, as Plaintiffs are free to assert claims in the alternative, pursuant to Fed. R. Civ. P. 8(d)(2) and (3).

Fed. R. Civ. P. 8(d) provides as follows:

> (1) _In General._ Each allegation must be simple, concise, and direct. No technical form is required.

> (2) *Alternative Statements of a Claim or Defense*. A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

*See also Marina Dist. Dev. Co., LLC v. Ivey*, 93 F.Supp.3d 327, 342 (D.N.J. 2015) ("[A] party may plead in the alternative and prevail on one of its two theories." (edit in original and internal citation omitted)); *Spellman v. Express Dynamics, LLC*, 150 F.Supp.3d 378, 391 (D.N.J. 2015) (noting that a party is free to plead inconsistent or alternative claims, and that it is only the "recovery" under inconsistent theories that is not permitted (quoting *Caputo v. Nice-Pak Prods, Inc.*, 300 N.J. Super. 498, 507, 693 A.2d 494 (N.J. Super. Ct. App. Div. 1997))). The rationale behind Rule 8(d) comports with that of subsection (e): "Pleadings must be construed so as to do justice."

Here, Plaintiffs recognize that the NJPLA "encompass[es] virtually all possible causes of action relating to harms caused by consumer and other products." *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F.Supp.3d 586, 596 (D.N.J. 2015) (quoting *In re Lead Paint Litig.*, 191 N.J. 405, 436-37 (N.J. 2007)). However, even such a clear statutory directive does not justify a complete disregard of Fed. R. Civ. P. 8(d). For example, it is possible

that this Court may find that the NJPLA does not apply to all claimants. If that were true, then those claimants would be left without a legal remedy, should this Court dismiss the common law claims. Rule 8(d) is meant to avoid this exact scenario.

Likewise, the rationale behind Rule 8(d) in no way prejudices Defendant. Defendant is free to reassert this exclusionary argument after the closing of the discovery period. For now, however, dismissal is premature. Accordingly, it is respectfully requested that Defendant's motion be denied as to Count II of the Complaint.[1]

## II.   WHETHER THE CLASS HAS EXPERIENCED THE REQUISITE LEVEL OF SEVERITY OF HARM FOR A DIRECT OR INDIRECT NIED CLAIM IS A QUESTION OF FACT AND THERFORE SHOULD NOT BE DISMISSED UNDER FRCP 12(b)(6).

Plaintiffs have adequately pleaded all elements of Negligent Infliction of Emotional Distress ("NIED") as Count III of the Complaint. This includes facts of physical and emotional harm that support both a "direct" claim by the Student Class and an "indirect" claim by the Parent Class. However, in the event that Plaintiffs have not sufficiently pleaded these allegations,

---

[1] In Argument III of Defendant's Memorandum of Law, Defendant seeks to dismiss Count II as it applies to the Parent Class, since members of the Parent Class admittedly did not suffer any direct physical injury from the defective product. Plaintiffs concede that in Count II, the term "Plaintiffs" is used instead of the more accurate "Members of the Student Class". For this reason, Plaintiffs do not oppose Argument III of Defendant's Memorandum of Law.

Plaintiffs respectfully request in the alternative leave to amend the Complaint in order to clarify any factual deficiencies.

**A.   PLAINTIFFS ARE NOT REQUIRED TO DETAIL SPECIFIC MANIFIESTATIONS OF EMOTIONAL DISTRESS IN THEIR COMPLAINT, AND SUCH FACT-SPECIFIC QUESTIONS SHOULD EXAMINED IN THE NORMAL COURSE OF DISCOVERY.**

Consistent with the standard of law governing this motion (*see* "STANDARD OF LAW", *supra*), this Court should follow controlling jurisprudence of permitting fact-sensitive questions to move forward into litigation.

First and foremost, it is important to remember that Plaintiffs need not specify exactly how the alleged physical injuries led to a manifestation of emotional distress, nor exactly how in what ways the parents were severely traumatized by the poisoning of their children. "Consistent with notice pleading rules and liberal discovery rules, meritorious claims must be permitted to proceed even if a plaintiff cannot adduce all the necessary facts at the outset[.]" *Strike 3 Holdings, LLC v. Doe*, 2020 WL 3567282, slip op. at 7 (D.N.J. Jun. 30, 2020) (in the context of permitting fictious defendants as placeholders) (citing *Alston v. Parker*, 363 F.3d 229, 233 n. 6 (3d Cir. 2004) ("[L]ack of knowledge does not bar entry into a federal court.")). As such, all that is required at this early stage of litigation is merely "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Defendant makes only one argument for the denial of the NIED claim as it pertains to the Student Class: the Complaint is insufficient in alleging the extent and duration of emotional distress sustained by the Student Class. This is a question of fact, and questions of fact require discovery to..."discover" the answers. It is therefore absolutely no surprise that

**EVERY SINGLE CASE THAT WAS CITED BY DEFENDANT IN PART II.A. \*\*\*AND\*\*\* PART II.B. OF ITS MEMORANDUM OF LAW WAS \*\*\*FULLY ADJUDICATED\*\*\* (I.E., EITHER BY SUMMARY JUDGMENT OR TRIAL JUDGMENT).[2]**

Consequently, the case law cited in Part II of Defendant's Memorandum of Law actually supports Plaintiffs' position that they should be granted an opportunity to litigate the factual merits of their claims, rather than be irreparably precluded from seeking justice. As it stands currently, Plaintiffs have satisfied the low pleading threshold of "more than a sheer possibility" that Defendant's conduct violated the law on several levels, resulting in physical and emotional harm to Plaintiffs. *See Ashcroft*, 556 U.S. at 678.

---

[2] Out of a total of <u>eighteen (18)</u> cases cited by Defendant in Part II of its Memorandum of Law, there were two cases that did, in fact, involve a motion to dismiss for failure to state a claim: *Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986) and the unpublished *Estate of Smith v. Riley*, 2016 WL 3398454 (D.N.J. Jun. 15, 2016). Obviously, both of these cases are in no way controlling upon this Court.

And even though Plaintiffs have admittedly not pleaded emotional distress with scalpel-like precision and granularity, Plaintiffs' limited knowledge at this early stage of litigation should not form a basis to "bar Plaintiffs from entry into a federal court". *See Alston*, 363 F.3d at 233 n. 6, *supra*. Accordingly, Defendant's motion should be denied.

**B.  THE STUDENT CLASS HAS ADEQUATELY PLEADED THE ELEMENTS OF A DIRECT CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT III).**

Notwithstanding the argument set forth in section II.A. herein, Plaintiffs have adequately asserted facts that support all elements of a "direct" claim of NIED. Therefore, Defendant's motion should be denied.

New Jersey recognizes two types of NIED claims. "The first group of claims encompasses cases 'in which a person who is the direct object of a tortfeasor's negligence experiences severe emotional trauma as a result of the tortfeasor's negligent act or omission.'" *Sporn v. Ocean Colony Condominium Ass'n*, 173 F.Supp.3d 244, 254 (D.N.J. 2001) (quoting *Gendek v. Poblete*, 139 N.J. 291, 296, 654 A.2d 970 (1995)). This has been commonly referred to as a "direct" claim of NIED.

A direct claim of NIED "'involves traditional concepts of duty, breach and causation' and 'determining defendant's negligence depends on whether defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability.'" *Id.*

(quoting *Williamson v. Waldman*, 150 N.J. 232, 239, 696 A.2d 14 (N.J. 1997)). The claimed emotional distress must be sufficiently substantial as "to result in physical illness or serious psychological sequelae." *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 412 F.Supp.3d 462, 471 (D.N.J. 2019) (quoting *Innes v. Marzano-Lesnevich*, 435 N.J. Super. 198, 237, 87 A.3d 775 (N.J. Super. Ct. App. Div. 2014), *aff'd*, 224 N.J. 584, 136 A.3d 108 (N.J. 2016)); *see also Major League Baseball Promotion Corp. v. Colour-Tex, Inc.*, 729 F.Supp. 1035 (D.N.J. 1990) ("Recovery under this tort is intended to cover the observation of shocking events that do not occur in the daily lives of most people." (quoting *Frame v. Kothari*, 115 N.J. 638, 643-44, 560 A.2d 675 (N.J. 1989))).

The emotional distress element of NIED is a significantly lower threshold pleading requirement than that of NIED's counterpart, Intentional Infliction of Emotional Distress (IIED), which requires a showing of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Veggian v. Camden Bd. of Educ.*, 600 F.Supp.2d 615, 629 (D.N.J. 2009) (quoting *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366, 544 A.2d 857, 863 (N.J. 1988) (quoting Restatement (Second) of Torts, § 46, cmt. d) (1965))).

17

Here, Plaintiffs have pleaded all elements of a direct NIED claim. It appears that Defendant is not objecting to the elements of duty, breach, causation, and damages. Rather, Defendant's sole objection to the direct NIED claim is that the damages claimed were not substantial enough to maintain the claim pursuant to New Jersey case law. Defendant would of course say that, and Plaintiffs would of course say that the damages claimed *are* substantial enough. Determining who is correct and who is incorrect in their assertions is a question of fact properly left to discovery.

As it stands currently, the allegations of severe emotional distress are found in the Complaint. The named Plaintiffs ingested the contaminated milk sustained physical injuries that warranted calling the police, EMS, and ultimately, hospitalization. *Compl.*, ¶¶ 20, 22. As permitted by the Standard of Law for 12(b)(6) motions, it can reasonably be inferred that elementary school-aged children would be severely and irreparably traumatized by a school-wide announcement that they just drank poison, and that school personnel are scrambling to coordinate emergency services and transport to a hospital. *Id.*, ¶¶ 19, 57. This would understandably instill fear in the average adult, let alone a vulnerable child.

The foregoing facts satisfy the pleading requirements set forth in 12(b)(6) jurisprudence. Defendant's motion must be denied as to Count III by the Student Class.

18

**C.   THE PARENT CLASS HAS ADEQUATELY PLEADED THE ELEMENTS OF AN INDIRECT CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (COUNT III).**

Again, notwithstanding the argument set forth in section II.A. herein, Plaintiffs have asserted facts that support all elements of an "indirect" claim of NIED. Therefore, Defendant's motion should be denied.

The second type of NIED claim, referred to as an "indirect" or "bystander" NIED claim, is one where a plaintiff, "not otherwise a direct object of a tortfeasor's negligence, experiences severe emotional distress when another person suffers serious or fatal injuries as a result of that negligence." *Sporn*, *supra*, 173 F.Supp.3d at 254 (quoting *Gendek*, 139 N.J. at 96, 654 A.2d 970).

For this type of claim a plaintiff is required to show: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Panarello v. City of Vineland*, 150 F.Supp.3d 734, 769 (D.N.J. 2016) (quoting *Abouzaid v. Manscard Gardens Assocs., LLC*, 207 N.J. 67, 78, 23, A.3d 388 (N.J. 2011)). The emotional distress requirement under this type of claim is the same as that of a direct claim, i.e., that the emotional distress was "sufficiently palpable, severe, or enduring to justify the imposition of liability." *Id.* at 770 (quoting *Decker*

*v. Princeton Packet, Inc.*, 116 N.J. 418, 431, 561 A.2d 1122 (N.J. 1989)). Accordingly, the threshold for showing emotional distress is again significantly less than the threshold for an IIED claim.

Defendant claims that Plaintiffs have failed to plead facts that would support prongs (1), (2), and (4) of an indirect NIED claim. Plaintiffs will address these arguments *in seriatim*.

### (1)  <u>Death or Serious Physical Injury of Students</u>

Plaintiffs identify that members of the Student Class suffered severe physical symptoms, such as stomach pains, nausea, vomiting, and diarrhea. *Compl.*, ¶ 21. Moreover, at least several of the children continue to experience injurious symptoms. *Id.*, ¶ 22. It is unclear at this very early stage of litigation the extent of physical damage to the children and the permanency thereof. *See id.*, ¶ 22 (given that the subject event occurred on March 30, 2022, and the subject Complaint was filed on April 1, 2022, that it is unclear just how much damage the contaminated milk did because "their ingestion of the chemical cleaning agent is still so recent"). Given that these children are at a critical cognitive and physical developmental age, the contamination could have an astronomically injurious impact on the children.

On that point: neither Defendant nor this Court has the ability to "play doctor" and determine the level of severity of physical injuries solely based on the assertions in the Complaint. Determining whether the level of severity satisfies a claim of

indirect NIED requires medical records, expert examinations, and generally an opportunity to ask the claimants the extent of their persisting symptoms. With all reasonable inferences afforded to Plaintiffs, it is respectfully submitted that Plaintiffs have adequately pleaded this prong of the indirect NIED claim.

### (4)   **Severity of Emotional Distress by Parent Class**

Members of the Parent Class have been severely traumatized by the March 30, 2022 contamination event, thus satisfying this prong of the indirect NIED claim.

It is unsurprising that parents would fear the safety and wellbeing of their elementary school-aged children. *See Compl.*, ¶ 58. To receive a call from the school during a school day, indicating that the milk had been contaminated, *id.*, ¶ 17 (apparently, with the contamination being concentrated and/or widespread enough to warrant individual teachers and school nurses calling parents, *id.*, ¶ 18) is a shocking and indelible event in a parent's life. As a result of contamination, purportedly caused by Defendant's conduct, parents had to travel to the hospital to pick up their child.

With all reasonable inferences afforded to Plaintiffs, the Complaint adequately alleges facts that satisfy this prong of the indirect NIED claim.

### (3)  Observation of the Injury

Finally, discovery is needed to ascertain when the members of the Student Class sustained the physical injuries, and whether the corresponding members of the Parent Class had observed those injuries.

Defendant's recitation of the law in regard to this prong deserves clarification. Although element no. 3 of a claim of indirect NIED is directly quoted as being "observation of the death or injury at the scene of the accident", *Portee v. Jaffee*, 84 N.J. 88, 101, 417 A.2d 521, 528 (N.J. 1980), the quotation misleadingly suggests that the traumatized observer be physically present at the scene of the accident. This is not the case; indeed, the New Jersey Supreme Court in *Portee* went into significant detail defining the parameters of this prong.

Specifically, the court recognized that in other jurisdictions, negligence liability was existed when the emotional trauma "resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident after its occurrence." 84 N.J. at 97, 417 A.2d at 526 (quoting *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). *Portee* used *Dillon* as a starting point for its analysis, but it did not use it as its ending point.

In contrast to *Dillon*'s requirement that the plaintiff be in physical proximity to the *accident* when the accident occurs, *Portee*

requires that the plaintiff contemporaneously observe the *injury* of the harmed party. *Id.* at 100 ("Accordingly we hold that observing the death or serious injury of another while it occurs is an essential element of a cause of action for the negligent infliction of emotional distress."). The court in *Portee* provided the following reason for this deviation from *Dillon*:

> The first factor discussed in Dillon that the plaintiff be near the injured person embodies the same observations made concerning the other requirements of direct perception and close familial relationship. Physical proximity may be of some relevance in demonstrating the closeness of the emotional bond between plaintiff and the injured family member. For example, one would generally suppose that the risk of emotional distress to a brother who is halfway across the country is not as great as to a mother who is at the scene of the accident. The proximity of the plaintiff to the accident scene increases the likelihood that he will witness the event causing the death or serious injury of a loved one. Yet it appears that if the plaintiff must observe the accident that causes death or serious injury, a requirement of proximity is necessarily satisfied. **The risk of emotional injury exists by virtue of the plaintiff's perception of the accident, not his [physical] proximity to it.**

*Id.* (emphasis added).

In the instant matter, there are factual questions about how the contamination physically affected members of the Student Class, including when the onset of severe physical symptoms occurred. Did they arise the moment that the milk touched the lips of the child, or did it take several days for physical injuries to

manifest? This factual question determines whether Plaintiffs have satisfied this prong. Pursuant to *Portee* and its progeny, in the event that a parent contemporaneously observed a drastic acute change in his/her child's physicality – whenever that would be – this prong would be satisfied.

Of course, Plaintiffs need not provide the evidence now to answer this question. All that Plaintiffs need to do at this early stage of litigation is to simply be afforded a reasonable inference that parents – individuals who are peculiarly attuned to their child's health and needs – observed a change in their child for the worse, and that observation caused them severe emotional distress. Plaintiffs again submit to this Court that they have pleaded facts for this Court to make this reasonable inference, and therefore, Defendant's motion must be denied as to Count III's indirect NIED claim.

**D.   ASSUMING *ARGUENDO* THAT THESE FACTS HAVE NOT BEEN ADEQUATELY PLEADED, PLAINTIFFS CAN READILY CORRECT ANY FACTUAL DEFICIENCIES WITH LEAVE TO AMEND THE COMPLAINT.**

Should this Court be inclined to grant any part of Defendant's motion, it is requested in the alternative that Plaintiffs be granted leave to clarify and/or add any factual inadequacies by way of amendment of the Complaint.

Fed. R. Civ. P. 15(a) allows a party in the situation of the present plaintiff to amend his pleading with the written consent of the adverse party or by leave of court. The broad, general rule

is that leave to amend shall be freely granted when justice so requires. *Howze v. Jones & Laughlin,* 750 F.2d 1208, 1212 (3d Cir. 1984); *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). "This mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Consequently, to reiterate the Standard of Law section herein, controlling law **requires** that a district court provide and expressly state the specific period of time in which the plaintiff has leave to amend before granting a dismissal of claims. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000); *Borelli v. City of Reading*, 532 F.2d 950, 951 n. 1 (3d Cir. 1976).

The limited reasons to nonetheless deny leave to amend a pleading are as follows: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" *Alvin*, 227 F.3d at 121; *see also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (including within that list if allowing the amendment would cause the non-moving party to expend significant additional resources to conduct discovery and prepare for trial). All of these reasons speak to the same reason for denial: undue prejudice to the non-moving party. *See, e.g.*, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (holding that a delay becomes "undue" when it places an unfair burden on the non-moving party or the court). "[P]rejudice

to the non-moving party is the touchstone for the denial of an amendment[.]" *Alvin*, 227 F.3d at 121 (citing *Cornell & Co., Inc. v. Occupational Health & Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). The non-moving party is required to present evidence to the court that it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered" in opposing a motion for leave to amend. *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

In regard to the futility of amendment specifically, a request for leave to amend may be denied if the amended pleading is unable to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), i.e., if the pleading as amended states no claim upon which relief can be granted. *Alvin*, 227 F.3d at 121 (citing *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998), *rev'd on other grounds*, 525 U.S. 459 (1999); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997)). Accordingly, a claim of futility by the non-moving party would place the court in a position to consider the motion under the same standard of law as that of a 12(b)(6) motion. *See id.*; *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 105 F.Supp. 2d 761, 765 (D.N.J. 2000) (noting that a court may only look at the pleading for a motion for leave to amend). Overall, unless a proposed amendment is "clearly futile … denial of leave to amend is improper." *Morton Int'l, Inc. v. A.E.*

*Staley Mfg. Co.*, 106 F.Supp. 2d 737, 745 (D.N.J. 2000). In summation: if futility of amendment or the other named reasons are absent, then a motion for leave to amend should be granted. *Long*, 393 at 400.

As an initial matter, there would be no prejudice to Defendant if leave for amendment of the Complaint were granted, nor has Defendant argued as such. Therefore, the only relevant argument that Plaintiffs anticipate Defendant making is that an amendment would be futile.

Many of the arguments presented by Defendant, including the degree of severity of the physical injury, the degree of severity of the resulting emotional harm, and the level of involvement of members of the Parent Class, are fact-sensitive (as opposed to being legally unviable as a matter of law). For this reason, it would be appropriate for this Court to grant Plaintiffs leave to amend the Complaint to address any technical factual deficiencies. Accordingly, it is respectfully requested in the alternative that this Court follow controlling law by dismissing claims without prejudice (and not with prejudice) and grant Plaintiffs leave to amend the Complaint.

III. **WHETHER THE ACTIONS AND CONDUCT OF DEFENDANT CONSTITUTED THE REQUISITE LEVEL OF WANTONNESS AND RECKLESSNESS NECESSARY FOR PUNITIVE DAMAGES IS A QUESTION OF FACT AND THEREFORE SHOULD NOT BE DISMISSED UNDER FRCP 12(b)(6).**

Plaintiffs have asserted facts that Defendant wantonly or recklessly disregarded safety precautions associated with food products when it placed contaminated milk into the stream of commerce. In the alternative, should this question of fact be deemed not adequately pleaded, Plaintiffs request leave to amend to include additional facts that would further articulate the acts and omissions of Defendant.

A. **PLAINTIFFS ADEQUATELY PLEADED FACTS THAT SUPPORT A CLAIM FOR PUNITIVE DAMAGES (IN PRAYER FOR RELIEF).**

Plaintiffs submit that the facts asserted in the Complaint are sufficient to deny Defendant's motion as to punitive damages.

Punitive damages may be claimed incidental to a substantive cause of action. *Giordano v. Solvay Specialty Polymers, USA, LLC*, 522 F.Supp.3d 26, 38 (D.N.J. 2022) (quoting *Hassoun v. Cimmino*, 126 F.Supp.2d 353, 372 (D.N.J. 2000)). To obtain punitive damages, a plaintiff must demonstrate that "the defendant's act was 'wanton and willful' by showing 'a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences.'" *Hottenstein v. City of Sea Isle City*, 977 F.Supp.2d 353, 370 (D.N.J. 2013) (quoting *Smith v. Whitaker*, 160 N.J. 221, 734 A.2d 243, 254 (N.J. 1999)). New Jersey has codified this standard in the Punitive Damages Act, N.J.S.A.

§§ 2A:15-5.9 *et seq.* Under this Act, a plaintiff seeking punitive damages must show that a defendant's acts or omissions "were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence." § 2A:15-5.12(a); *see also* -5.12(b) (providing a non-exhaustive list of factors that should be considered when determining whether punitive damages should be awarded).

Yet again, Defendant attempts to gain a strategic advantage by having this Court dismiss a critical part of Plaintiffs' Complaint before Plaintiffs be afforded an opportunity to investigate the veracity and viability of their claims. Given the size of this contamination event – an event stemming from products that presumably went through numerous steps of the supply chain – it is reasonable to infer that at least one representative at Defendant-company was aware of this contamination and either contumaciously or recklessly shipped the product out anyway.

Accordingly, granting this motion and denying a claim for punitive damages would be wholly premature. It is respectfully requested that this motion be denied as to punitive damages, so that the viability of the claim can be determined.

**B.    ASSUMING *ARGUENDO* THAT THESE FACTS HAVE NOT BEEN ADEQUATELY PLEADED, PLAINTIFFS CAN READILY CORRECT ANY FACTUAL DEFICIENCIES WITH LEAVE TO AMEND THE COMPLAINT.**

The same rationales in section III.D., *supra*, apply to the claim of punitive damages. Should this Court be inclined to dismiss Plaintiffs' claim for punitive damages based on factual deficiencies, Plaintiffs would then request that the dismissal be made without prejudice, and that Plaintiffs be afforded an opportunity to correct these deficiencies so that the claims can be adjudicated on their merits.

## CONCLUSION

Based on the foregoing, it is respectfully requested that this Honorable Court deny Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) in full and schedule a case management conference for a discussion on discovery.

In the alternative, should this Court be inclined to grant any part of Defendant's motion, it is respectfully requested based on the foregoing that any dismissals of claims be done without prejudice, and that Plaintiffs be afforded leave to amend the Complaint to address any factual deficiencies.

Respectfully Submitted,


**LENTO LAW GROUP, P.C.**

Date: July 5, 2022                    By: _____

JOHN A. FONTE, Esquire
ON THE BRIEF


By: _____

SAMUEL D. JACKSON, Esquire
sdjackson@lentolawgroup.com

*Attorneys for*
*Plaintiffs*