## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

TIFFANEE GOULD, individually and on: behalf of her minor son, A.J. *et al.*,

               Plaintiffs,

     v.

THE GUIDA-SEIBERT DAIRY COMPANY: *et al.*,

               Defendants.

Case No.: 1:22-cv-01861-NLH-AMD

**<u>Motion Date: July 18, 2022</u>**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE <u>CLASS ALLEGATIONS</u>

Philip A. Goldstein
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
(212) 548-2167
*pagoldstein@mcguirewoods.com*

James F. Neale (admitted *pro hac vice*)
Benjamin P. Abel (admitted *pro hac vice*)
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
323 Second St. S.E., Suite 700
Charlottesville, VA 22902
(434) 977-2500
*jneale@mcguirewoods.com*
*babel@mcguirewoods.com*

*Attorneys for Defendant The Guida-Seibert Dairy Company*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.    INDIVIDUAL ISSUES PREDOMINATE. ................................................ 2

II.   PLAINTIFFS FAIL TO SUBSTANTIVELY ADDRESS THEIR
IMPERMISSIBLE FAIL-SAFE CLASSES................................................ 9

III.  THE RULES ENABLING ACT, NEW JERSEY LAW, AND THIS
COURT'S OBLIGATIONS REQUIRE HIGHLY
INDIVIDUALIZED DETERMINATIONS TO PROTECT THE
STUDENT CLASS................................................................................... 13

CONCLUSION ................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987) ..................................................................4

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................2, 5, 8

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998) .................................................................2

*Colfer v. Royal Globe Ins. Co.*,
519 A.2d 893 (N.J. Super. Ct. App. Div. 1986) ..................................14

*Cumberland Cnty. Welfare Bd. v. Rodriguez*,
365 A.2d 723 (N.J. Super. Ct. Law Div. 1976) ...................................14

*DuRocher v. Nat'l Collegiate Athletic Ass'n*,
No. 1:13-cv-01570-SEB-DML, 2015 U.S. Dist. LEXIS 41110
(S.D. Ind. Mar. 31, 2015)........................................................................3

*Fitzgerald v. Newark Morning Ledger Co.*,
267 A.2d 557 (N.J. 1970) ...................................................................14

*In re Flint Water Cases*,
558 F. Supp. 3d 459 (E.D. Mich. 2021) .................................13, 14, 15

*In re Fosamax Prods. Liab. Litig.*,
248 F.R.D. 389 (S.D.N.Y. 2008) ..........................................................6

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d. Cir. 2013) ..............................................................12

*Hojnowski v. Vans Skate Park*,
901 A.2d 381 (N.J. 2006) ...................................................................14

*Hurd v. Monsanto Co.*,
164 F.R.D. 234 (S.D. Ind. 1995) ..........................................................4

*Jones v. BRG Sports, Inc.*,
No. 18 C 7250, 2019 U.S. Dist. LEXIS 128493 (N.D. Ill. Aug. 1, 2019) ................................................................................................5

*Kondratick v. Beneficial Consumer Disc. Co.*,
No. 04-4895, 2006 U.S. Dist. LEXIS 4754 (E.D. Pa. Feb. 8, 2006).................10

*Modern Holdings, LLC v. Corning, Inc.*,
No. 5:13-cv-00405-GFVT, 2018 U.S. Dist. LEXIS 52559 (E.D. Ky. Mar. 29, 2018)...........................................................................6

*Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*,
1 F.4th 145 (3d Cir. 2021) ................................................................14

*Moore v. Primecare Med., Inc.*
No. 3:19-cv-106, 2020 U.S. Dist. LEXIS 45332 (W.D. Pa. Mar. 16, 2020) ....................................................................................11, 12

*Quick v. Shell Oil Co.*,
241 F.R.D. 435 (S.D.N.Y. 2007) .....................................................6

*Rowe v. E.I. Dupont De Nemours & Co.*,
No. 06-1810 (RMB), 2008 U.S. Dist. LEXIS 103528 (D.N.J. Dec. 23, 2008) ............................................................................3, 4, 8

*Smith v. Brown & Williamson Tobacco Corp.*,
174 F.R.D. 90 (W.D. Mo. 1997) .....................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................12

*Wheeler v. United Servs. Auto Ass'n*,
No. 3:11-cv-00018-SLG, 2013 U.S. Dist. LEXIS 122447 (D. Alaska Aug. 27, 2013) ......................................................................6

## Other Authorities

1 BRIAN ANDERSON & ANDREW TRASK, CLASS ACTION PLAYBOOK
(2021)...............................................................................................11

1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS (18th ed. 2021) ........................................................................................9

1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS (18th ed. 2021) ......................................................................................5

1 WILLIAM R. RUBENSTEIN, NEWBERG ON CLASS ACTIONS (5th ed. 2021) .....................................................................................9

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ..................................5

N.J. Ct. R. 4:26-2(b)(2)-(4) ......................................................................14

N.J. Ct. R 4:44-3. .......................................................................................14

Rule 12(f) ...................................................................................................15

Rule 23 .........................................................................................................2

Rule 23(b)(3) ...........................................................................................3, 6

Rules 23(c)(1)(A) ......................................................................................15

Rule 23(d)(1)(D) ........................................................................................15

Rule 23(e)(2) ..............................................................................................14

## **INTRODUCTION**

In their opposition to Guida's motion to dismiss, Plaintiffs describe at length the many ways in which they believe extensive individualized discovery is required to determine which putative class members may have evidence satisfying each element of the various claims they advance. (*See generally* ECF 20.) Some children may have had physical symptoms while others did not. (*Id.*) Some may have emotional distress. (*Id.*) Some injuries may be severe. (*Id.*) Some may be permanent. (*Id.*) Some injuries may have manifest immediately, others subsequently. (*Id.*) Some parents may have observed their children's injuries. (*Id.*) Plaintiffs argue that these allegations, missing from their Complaint, can only be demonstrated through discovery. (*Id.*)

But in opposing Guida's motion to strike class allegations, (ECF 21), Plaintiffs insist the opposite. Here, Plaintiffs contend that all putative class members consumed the same amount of the same substance, with the same resulting injuries, with the identical treatment, and with indistinguishable damages. (*Id.*) No putative class member, Plaintiffs maintain, has any other contributing cause of emotional distress. (*Id.*) Thus, Plaintiffs contend there is no need for individual discovery.

Plaintiffs cite (and Defendant is aware of) no case in which a putative class of minors alleging emotional injuries after ingesting an allegedly adulterated food product was certified in a products liability case. The reason is clear. Such

1

allegations necessarily involve myriad individual determinations, as the Supreme Court warned in *Amchem*.  Additionally, Plaintiffs' fail-safe classes would require this Court to decide the merits of their claim to determine class membership.  Finally, to protect minor class members, this Court would have to appoint a guardian for each putative class member to advise on opting out of, resolving, or objecting to the litigation and any potential resolution.

It is difficult to imagine a dispute more poorly suited for adjudication under Rule 23 than this case.  For these reasons, this Court should grant the motion to strike Plaintiffs' class allegations.

## ARGUMENT

## I.   INDIVIDUAL ISSUES PREDOMINATE.

Class treatment is inappropriate because individual issues predominate in both the liability and damages phases of Plaintiffs' personal (and predominantly emotional) injury claims.  Plaintiffs claim these individualized issues are no barrier to class certification but offer no example of any court certifying a contested class as to liability in such a case ever, much less after the Supreme Court's admonitions in *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).  The reason is clear—there are none.  Similar Third Circuit decisions ensure that this Court should not be the first.  *See, e.g.*, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998) (affirming decertification in a personal injury chemical exposure case and holding

"[d]ifferences in amount of exposure and nexus between exposure and injury lead to disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available of each plaintiff" (citation and quotation marks omitted)); *see generally DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 1:13-cv-01570-SEB-DML, 2015 U.S. Dist. LEXIS 41110, at *20 (S.D. Ind. Mar. 31, 2015) (granting motion to strike putative personal injury class allegations and noting that "the Third and Sixth Circuits along with a myriad of district courts have granted motions to strike when the court was unable to see how discovery or for that matter more time would have helped the plaintiffs strengthen the class allegations" (citations omitted)).

Unsurprisingly, given this uniform governing precedent, the District Courts of New Jersey have ruled similarly. *See, e.g.*, *Rowe v. E.I. Dupont De Nemours & Co.*, No. 06-1810 (RMB), 2008 U.S. Dist. LEXIS 103528, at *60-66 (D.N.J. Dec. 23, 2008) (denying certification despite some common issues). As the court held in *Rowe*, even when "there are some common issues in this [chemical exposure] cause . . . the litany of individualized issues that pervade Plaintiffs' requests for" relief precluded Rule 23(b)(3) certification based on the plaintiffs' level of exposure, different susceptibilities to the chemical, as well as their "different medical histories

and different background risks of disease." *Id.* at *61-62 (citing *Amchem*).[1]

> In a chemical exposure case:
>
> Whether a substance poses a health risk in the abstract is simply not grounds for class certification under Rule 23(b)(3). . . . Thus, even if a jury could make a class-wide finding of fact regarding the general health risks posed by [the chemical], resolution of liability issues would still require an individual inquiry into the circumstances involving each class member's exposure and susceptibility.

*Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 (S.D. Ind. 1995). "The relevant question . . . is not whether [the chemical] has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 165 (2d Cir. 1987); *see also id* ("That determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (*e.g.* state of health, lifestyle) and the nature of exposure to [the chemical]."); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 96 (W.D. Mo. 1997) ("Liability will not turn on whether [the products] are generally capable of causing

---

[1] The court's detailed, well-reasoned decision in *Rowe* belies Plaintiffs' argument that "it is not expected that individualized expert testimony will be needed to explain each Plaintiff's individual symptoms and treatment; rather, one expert can testify generally about the expected symptoms and treatment associated with consumption of the contaminated milk." (ECF 21 at 3.) As *Rowe* drives home, in a personal injury, chemical exposure case, (especially one alleging emotional distress that "could have astronomically injurious impact on the children" in a "critical cognitive and physical development age," (ECF 20 at 20)), this Court will require medical expert testimony for each individual claimant.

disease: liability will depend upon whether [the products] caused a particular plaintiff's disease.").

These concerns are only heightened when adjudicating emotional distress, as Plaintiffs allege. Plaintiffs express incredulity that Guida's would ever "seriously suggest[] they intend" to "present evidence of prior medical conditions causing individual Plaintiff's injuries that rebut[] Plaintiffs' *prima facie* case and requires individualized causation determinations." (ECF 21 at 3.) But such evidence is exactly the sort materially relevant to defending personal injury claims, particularly those alleging serious emotional distress like those claimed here. *See, e.g.*, *Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 U.S. Dist. LEXIS 128493, at *17 (N.D. Ill. Aug. 1, 2019) (granting motion to strike putative class allegations and noting: "And, if that were not enough, there are seemingly limitless confounding causal mechanisms and possible extenuating circumstances, including 'family and medical history, age, diet, and lifestyle,' which 'may affect each putative plaintiff's response'" (quoting *DuRocher*, 2015 U.S. Dist. LEXIS 41110, at *33)).

A quarter century after *Amchem*, "[i]t can now fairly be said that all relevant Court of Appeals and the bulk of relevant district court decisions have rejected class certification in products liability cases." 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 5:41 (18th ed. 2021) (citation and quotation marks omitted); *see also* MANUAL FOR COMPLEX LITIGATION § 22.7 (4th ed. 2004). This aversion to

certification of personal injury classes is most obvious in cases alleging personal injury and property or commercial damages.  For example, in *Quick v. Shell Oil Co.*, 241 F.R.D. 435 (S.D.N.Y. 2007), the court certified two subclasses related to the plaintiffs' alleged property damage but refused to certify a subclass regarding the plaintiffs' personal injuries: "A jury could not make a class-wide determination because the exposure of each member will vary. . . . In addition, the medical evidence regarding causation as to the various alleged injuries will vary enormously."  *Id.* at 449.

District courts nationwide follow suit.  *See, e.g.*, *Modern Holdings, LLC v. Corning, Inc.*, No. 5:13-cv-00405-GFVT, 2018 U.S. Dist. LEXIS 52559, at *43-44 (E.D. Ky. Mar. 29, 2018) ("In short, mass toxic tort cases presenting many factual questions pertaining to the time and duration of exposure, in what manner . . . and to what result, are only very rarely suitable for class-action treatment, being precluded by individual questions that predominate over common questions."); *Wheeler v. United Servs. Auto Ass'n*, No. 3:11-cv-00018-SLG, 2013 U.S. Dist. LEXIS 122447, at *15 (D. Alaska Aug. 27, 2013) ("[C]ertain categories of cases, such as those involving 'significant personal injury damages,' are inappropriate for class actions because of the extent of the individualized damage evaluations necessary, which prevents them from meeting the predominance requirement of Rule 23(b)(3)."); *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 402 (S.D.N.Y. 2008) (accord).

6

Plaintiffs argue that each individual plaintiff and putative class member is nearly identical.  (ECF 21 at 1-3.)  But, the hardest words to argue against are one's own.  In Plaintiffs' simultaneously-filed opposition to Guida's motion to dismiss, they argued the opposite.  (*See generally* ECF 20.)  There, Plaintiffs make clear the large number of individual issues that exist (and supposedly require discovery):

- "Determining whether the level of severity [of injury] satisfies a claim of indirect NIED requires medical records, expert examinations, and generally an opportunity to ask claimants the extent of their persisting symptoms."  (*Id.* at 21);

- "For at least some of the members of the Student class, some of these physical symptoms persist."  (*Id*. at 8);

- "This Court may find that the NJPLA does not apply to all claimants."  (*Id*. at 13);

- "Plaintiffs are not required to detail specific manifestations of emotional distress in their Complaint, and such fact-specific questions should be examined in the normal course of discovery."  (*Id*. at 14);

- "At least several of the children continue to experience injurious symptoms."  (*Id.* at 20);

- "Discovery is needed to ascertain . . . whether the corresponding members of the Parent Class had observed [their student's] injuries."  (*Id*. at 22);

- "There are factual questions about how the contamination physically affected members of the Student Class, including when the onset of severe physical symptoms occurred. Did they arise the moment that the milk touched the lips of the child, or did it take several dates for physical injuries to manifest? This factual question determines whether Plaintiffs have satisfied this prong. . . . In the event that a parent contemporaneously observed a drastic acute change in his/her child's physicality—whenever that would be—this prong would be satisfied." (*Id.* at 23-24); and

- "Many of the arguments presented by Defendant, including the degree of severity of the physical injury, the degree of severity of the resulting emotional harm, and the level of involvement of members of the Parent Class, are fact-sensitive." (*Id.* at 27.)

Of course, resolution of these central questions will vary among individuals and will require the fact-finder to make individualized determinations. Plaintiffs concede this repeatedly in their opposition to Guida's motion to dismiss. As *Rowe* makes clear, doing so will not only involve individualized inquiries of each plaintiff and putative class member, but will also involve medical expert testimony for each. As a result, *Amchem* and its progeny make clear that Plaintiffs could never succeed

in certifying these classes.  Accordingly, the motion to strike should be granted.[2]

## II.   PLAINTIFFS FAIL TO SUBSTANTIVELY ADDRESS THEIR IMPERMISSIBLE FAIL-SAFE CLASSES.

Plaintiffs' opposition fails to address in any real way their fail-safe class definitions.  They argue that "if courts applied the 'fail-safe' analysis in the overly-broad manner that Defendant proposes, then class certifications would be struck in every single case."  Plaintiffs are mistaken.

Plaintiffs' class definitions ascribe membership to those who have an injury caused by ingestion (or by their student's ingestion) of the product.  (ECF 1 at ¶ 26 (limiting class membership to students (and their parents) who ingested the product and "experienced physical symptoms or illness therefrom").)  This class definition would require this Court to conduct mini-trials for each putative class member simply to determine class memberships.  "Courts hold that such liability-begging definitions are administratively infeasible, as the inquiry into class membership would require holding countless hearings resembling 'mini-trials.'"  1 WILLIAM R. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 3:6 (5th ed. 2021); *see also* 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 4:2 (18th ed. 2021) ("A need to conduct individualized mini-hearings to determine if a particular person is part of a proposed class is counter to the requirement of objective ascertainability.").

---

[2] (*See, infra*, Guida's Mot. to Strike Opening Br., ECF 11-1 (citing cases granting motions to strike putative personal injury class allegations).)

"If determining class membership requires a mini-hearing on the merits of each class member's case, the proposed class definition and class action are untenable." *Kondratick v. Beneficial Consumer Disc. Co.*, No. 04-4895, 2006 U.S. Dist. LEXIS 4754, at *21 (E.D. Pa. Feb. 8, 2006) (first citing *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D. Pa. 2000); and then citing *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995)).  In *Kondratick*, the court refused to certify fail-safe classes involving 260 putative class members:

> Therefore, for each of the approximately 260 proposed class members, a mini-hearing would have to be conducted to determine the factual scenario of each proposed class members' case . . . Therefore, this class definition is unworkable because class membership cannot be determined without the court conducting a mini-hearing on the merits.

*Id.* at *22.   In this case, Plaintiffs allege that at least 7,553 students may be prospective class members.  (ECF 1 at ¶ 29.)  And while Plaintiffs claim for the first time in their opposition that "over 60 children" were treated because of the Incident, (ECF 21 at 3), even a few dozen mini-trials will render the classes unascertainable.

Equally problematic is the fact that Plaintiffs' proposed class definitions exclude from membership any student (or the parent of a student) who ingested the product but did not "experience physical symptoms or illness therefrom."  This means that a student who claims injury, but whose claim is rejected by this Court as not a member of the class, suffers no preclusive effect from such a finding.  That student, not being a member of the class bound by any rulings in this case, would be

free to relitigate his or her claim.  *See* 1 BRIAN ANDERSON & ANDREW TRASK, CLASS ACTION PLAYBOOK § 2.02[1] (2021) (likening fail-safe classes to "Schrödinger's cat . . . If [the plaintiffs] do not [prove their case], then the class has none; it never existed, rendering the defendant's 'victory' hollow because then no one is bound by the defense judgment.").

Plaintiffs' case thus fundamentally differs from the only case on which they substantively rely in opposition.  (*See* ECF 21 at 4 (citing *Moore v. Primecare Med., Inc.*  No. 3:19-cv-106, 2020 U.S. Dist. LEXIS 45332 (W.D. Pa. Mar. 16, 2020).)  *Moore* is an employment law case involving allegations that the defendant misclassified certain employees as independent contractors, depriving them of overtime wages.  2020 U.S. Dist. LEXIS 45332 at *2-4.  The plaintiff sought to represent a class of "all persons who are or were employed by Defendant in Pennsylvania as [mental health] prison therapists during a specific time period."  *Id.* at *10.[3]  As a result, the *Moore* court did not find the proposed class to be a fail-safe class **specifically because** it did not need to make any liability determinations: "It is not necessary for the Court to determine which therapists were employees or independent contractors to certify the class.  Instead, the Court must look to see

---

[3] Plaintiffs mischaracterize the *Moore* class definition as one that included only individuals "'entitled' to damages as required by law."  (ECF 21 at 4.)  Plaintiffs incorrectly inserted a liability determination to the *Moore* class definition that does not exist.  2020 U.S. Dist. LEXIS 45332, at * 10.

whether the therapists worked more than 40 hours a week and were not paid overtime wages for that time." *Id.* at *11. Because the *Moore* court needed only to engage in the objective exercise of determining which therapists worked more than 40 hours but received no overtime pay (rather than deciding whether their work status entitled them to such wages), it denied the motion to strike. *Moore* is not relevant to this Court's analysis here.

Plaintiffs also cite *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354-55 (3d. Cir. 2013). (ECF 21 at 4.) It is entirely unclear why Plaintiffs do so, other than that these cases deal generally with ascertainability. Neither case involves allegations of fail-safe classes, and both cases reverse class certifications. If anything, *Hayes* strongly supports Guida's motion to strike: "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." 725 F.3d at 355 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (quotation marks omitted)). The *Hayes* court continues, stating that "other courts have gone so far as to hold that 'where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails.'" *Id.*[4]

---

[4] Of course, and despite Plaintiffs' suggestions to the contrary, (ECF 1 at ¶ 31), Guida's does not maintain a database showing which students ingested the product, much less those that may have experienced symptoms as a result.

Plaintiffs' class definitions would require this Court to conduct a multitude of liability-begging mini-trials to determine class membership.  Such classes are impermissibly fail-safe in nature, and this Court should grant the motion to strike.

## III.   THE RULES ENABLING ACT, NEW JERSEY LAW, AND THIS COURT'S OBLIGATIONS REQUIRE HIGHLY INDIVIDUALIZED <u>DETERMINATIONS TO PROTECT THE STUDENT CLASS</u>.

Plaintiffs propose litigating the claims of "hundreds to [] thousands" of minors in the putative Student Class.  (ECF 1 at ¶ 30.)  But, this Court cannot allow a minor to independently determine whether he or she should opt out of a class, settle his or her claim, or object to any class settlement.  Any such determination (and many more) would require the appointment and recommendation of a guardian ad litem to protect the interests of each minor, even in a suit in which the minor is a named party.  In a class action that adjudicates the claims of individuals not before this Court, these concerns are only exacerbated.  This, too, precludes class certification. *See, e.g.*, *In re Flint Water Cases*, 558 F. Supp. 3d 459, 493-97 (E.D. Mich. 2021) (analyzing analogous Michigan law regarding the litigation and settlement of minors' claims and denying certification of a minor class that would "violat[e] the minors' substantive rights under Michigan law to bring, settle, and abrogate their own claims").[5]  This Court has a "duty to ensure that incompetent persons are

---

[5] The *In re Flint Water Cases* court also analyzed in detail how, if the court did not conduct such individualized determinations, no minor would be bound by any

properly represented." *Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 148 (3d Cir. 2021).

Pursuant to the Rules Enabling Act and New Jersey law, to protect the minor individual students and the Student Class' substantive rights, this Court would need to appoint guardians ad litem for each minor and conduct an individualized inquiry as to any proposed settlement before determining "whether the settlement is fair and reasonable as to its amount and terms" as to that minor. *See* N.J. Ct. R. 4:26-2(b)(2)-(4); 4:44-3. A court must engage in these inquiries because, as a matter of New Jersey law, a minors' parents lack the ability to "compromise or release claims or causes of action belonging to the child." *Fitzgerald v. Newark Morning Ledger Co.*, 267 A.2d 557, 558 (N.J. 1970); *see also Hojnowski v. Vans Skate Park*, 901 A.2d 381, 387 (N.J. 2006) (collecting cases). This is, in part, because parents and their children may have divergent interests in litigation. *See, e.g.*, *Colfer v. Royal Globe Ins. Co.*, 519 A.2d 893, 894 (N.J. Super. Ct. App. Div. 1986); *Cumberland Cnty. Welfare Bd. v. Rodriguez*, 365 A.2d 723, 730-31 (N.J. Super. Ct. Law Div. 1976).

Without citing any authority, Plaintiffs suggest that Rule 23(e)(2) approval of a settlement "as part of the ordinary class procedure" abrogates these requirements. (ECF 21 at 5.) Or, to the extent guardians ad litem must be appointed by this Court,

---

approved settlement and would not be claim-precluded from relitigating the case upon reaching majority. *Id.* at 494-95.

Plaintiffs propose that this Court simply "make such appointments, as appropriate, which will cure any potential procedural deficiencies that may exist on those grounds." (ECF 21 at 5.)  But these arguments ignore the fundamental issues facing this Court: Plaintiffs' claims require a process entirely different from the "ordinary class procedure" attendant to classes of adult litigants.   And following such processes by "mak[ing] such appointments, as appropriate," of guardians ad litem would require highly specific, individualized determinations of an appropriate representative for each minor at each stage of the litigation.  As *In re Flint Water Cases* held under substantively identical Michigan law, this Court could not comply with its obligations under New Jersey law and appoint a single master guardian ad litem or even panels of guardians ad litem.  *See* 558 F. Supp. 459 at 495-97.  As a result, and much like the Michigan court, this Court cannot certify the Student Class as proposed by Plaintiffs "without violating the minors' substantive rights under [New Jersey] law to bring, settle, and abrogate their own claims." *Id.* at 497.  For this additional reason, this Court should grant the motion to strike the class.

## CONCLUSION

Defendant, The Guida-Seibert Dairy Company, requests that this Court grant its instant motion, strike Plaintiffs' class allegations under Rules 23(c)(1)(A), (d)(1)(D), and 12(f), and grant all such further relief as this Court deems just and proper.

Dated: July 11, 2022
     New York, NY

Respectfully Submitted,

*/s/ Philip A. Goldstein*
Philip A. Goldstein
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
Telephone: (212) 548-2167
Fax: (212) 548-2150
Email: pagoldstein@mcguirewoods.com

*Attorneys for Defendant The Guida-Seibert Dairy Company*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of July, 2022, I caused a true and correct copy of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS to be filed electronically with the Clerk of Court via the Court's CM/ECF system.  Counsel of record are registered CM/ECF users and will be served by the CM/ECF System.

*/s/ Philip A. Goldstein*
Philip A. Goldstein

*Counsel for Defendant The Guida-Seibert Dairy Company*
