**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

TIFFANEE GOULD, individually
and on behalf of her minor son,
A.J., et al.,

        Plaintiffs,

   v.

THE GUIDA-SEIBERT DAIRY
COMPANY, et al.,

        Defendant.

Civ. No. 22-cv-01861 (NLH/AMD)

**OPINION**

---

**APPEARANCES:**

JOSEPH D. LENTO, ESQUIRE
SAMUEL D. JACKSON, ESQUIRE
LENTO LAW GROUP, P.C.
3000 ATRIUM WAY
SUITE 200
MT. LAUREL, NJ 08054

   *Attorneys for Plaintiffs*

PHILIP A. GOLDSTEIN, ESQUIRE
MCGUIREWOODS LLP
1251 AVENUE OF THE AMERICAS
20TH FLOOR
NEW YORK, NEW YORK 10020

   *Attorneys for the Defendant The Guida-Seibert Dairy Company*

**HILLMAN**, District Judge

   Before the Court is Defendant the Guida-Seibert Dairy

Company's ("Defendant" or "Guida-Seibert") Partial Motion to

Dismiss (ECF 10) and Motion to Strike (ECF 11).  For the reasons

expressed below Defendant's Partial Motion to Dismiss will be granted and Defendant's Motion to Strike will be denied.

<u>**BACKGROUND**</u>

For purposes of the instant motion, the Court will treat all facts alleged in the Complaint as true and draw all reasonable inferences in favor of Plaintiffs.  See <u>Jones v. Pi Kappa Alpha Int'l Fraternity</u>, 431 F. Supp. 3d 518, 522 (D.N.J. Dec. 18, 2019).

Plaintiffs are a group of parents individually and on behalf of their minor children who allege that their children were injured as a result of drinking contaminated milk processed by Guida-Seibert.  (ECF 1 at 1–3).  The minor children all attend school in the Camden School District.  (Id. at 3).  The Camden School district has a contract with Aramark for food services within the schools.  (Id. at 4).  In turn, Aramark contracts with Guida-Seibert for milk to provide in the schools. (Id.).

On March 30, 2022, Plaintiffs were advised that contaminated milk was provided to the students and that their children consumed the contaminated milk.  (Id.)  The milk was contaminated with a commercial cleaning agent, either Vortex of Vortexx.  (Id. at 4–5).  Plaintiffs were further advised that that their children were displaying physical symptoms after consuming the milk.  (Id. at 5).  Plaintiffs' children's

symptoms included "severe stomach pain and cramping, nausea, vomiting, diarrhea, and flatulence." (Id.). Plaintiffs' children were transported from school to a local hospital. (Id. at 4). All of the children were discharged from the hospital. (Id. at 5). Plaintiffs claim they are unsure what lasting effects the chemical consumption may have on their children. (Id.). As of the filing of the complaint, some of the children continued to have stomach pain. (Id.).

Plaintiffs filed their complaint on April 1, 2022. (ECF 1). Plaintiffs allege the following counts: (1) negligence, (2) New Jersey Products Liability Act ("NJPLA"), and (3) Negligent Infliction of Emotional Distress ("NIED"). (Id. at 9-12).

Plaintiffs' complaint includes class allegations. (Id. at 6-8). Plaintiffs describe two classes, the New Jersey Parent Class consisting of the parents and legal guardians of students in New Jersey school districts that ingested Guida-Seibert contaminated milk, and the New Jersey Student Class consisting of students in New Jersey school districts that ingested the contaminated milk. (Id. at 6).

On May 23, 2022, Defendant filed both its Motion to Dismiss (ECF 10) and Motion to Strike (ECF 10). On July 5, 2022, Plaintiffs filed memorandums in opposition to these motions. (ECF 20, ECF 21). Finally, Defendant filed reply briefs on July 11, 2022. (ECF 24, ECF 25).

## DISCUSSION

**A. Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and

(3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).  A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

"A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

I.   **Subject Matter Jurisdiction**

This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332.

II.  **Motion to Dismiss**

A. **Negligence and NIED**

Defendants argue that Plaintiffs' claims for negligence and for NIED should be dismissed because the NJPLA subsumes these other causes of action in products liability matters.  (ECF 10-1 at 13-15).  While Plaintiffs admit that the NJPLA "encompass[es] virtually all possible causes of action relating to harms caused

by consumer and other products," they argue that that Federal
Rule of Civil Procedure 8 permits plaintiffs to plead in the
alternative.  (ECF 20 at 12-13) (alteration in original).  Thus,
they claim that the negligence and NIED counts should proceed in
the event that the NJPLA does not apply to certain plaintiffs.
(Id. at 13-14).  Defendant responds that courts have already
contemplated this argument, and found that such alternative
pleading "would 'contravene the NJPLA's intent to provide a
single statutory products liability claim.'" (ECF 24 at 9
(quoting Nagy v. Goodyear Tire & Rubber Co., No. 12-4235, 2013
U.S. Dist. LEXIS 45147, at *6-7 (D.N.J. Mar. 28, 2013)).

The NJPLA was enacted by the New Jersey Legislature in 1987
"based on an 'urgent need for remedial legislation to establish
clear rules with respect to certain matters relating to actions
for damages for harm caused by products.'" Sinclair v. Merck &
Co., Inc., 948 A.2d 587, 593 (N.J.2008) (citing N.J.S.A. 2A:58C-
1(a)).  In 2007, the New Jersey Supreme Court set forth
substantive guidance regarding the scope of the NJPLA and
explicitly recognized that "[w]ith the passage of the Product
Liability Act, . . . there came to be one unified, statutorily
defined theory of recovery for harm caused by a product." In Re
Lead Paint Litigation, 924 A.2d 484, 503 (N.J. 2007) (citation
omitted) (alteration in original).  The New Jersey Supreme Court
also observed that "[t]he language chosen by the Legislature in

6

enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." Id. (citing N.J.S.A. 2A:58C-1(b)(3)).

A product liability action is statutorily defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3). The NJPLA further defines the type of "harm" caused by a product to include the following: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. 2A:58C-1(b)(2).

Thus, regardless of the underlying legal theory advanced by a plaintiff, the NJPLA is the exclusive method to prosecute a claim for physical harm caused by a product, where that harm is claimed to be caused by a manufacturing defect, a design defect, or a failure for the product to contain adequate warnings or instructions. Koruba v. American Honda Motor Co., Inc., 935 A.2d 787, 795 (N.J. Super. Ct. App. 2007); N.J.S.A. 2A:58C-2.

Plaintiffs' allegations fall squarely within the purview of the NJPLA's coverage of manufacturing defects, as they allege an issue with the milk's packaging or processing.  (ECF 1 at 9, 12).  Therefore, Plaintiffs' negligence and NIED claims are subsumed by the NJPLA.  Plaintiffs' counts for negligence and for NIED will be dismissed.

### B. **NJPLA**

The NJPLA provides for strict liability against a manufacturer or seller of a product where the claimant proves that a product caused harm because it "was not reasonably fit, suitable or safe for its intended purpose" because it failed to conform to design specifications or standards, failed to include adequate warnings, or was defectively designed."  N.J.S.A. 2A:58C-2.  Here, Plaintiffs allege a manufacturing defect, as the milk "deviated from the 'design specification, formulae, or performance standards' of [Guida-Seibert] or from 'otherwise identical units', i.e. cartons of milk from other, uncontaminated batches."  (ECF 1 at 10).

Defendant argues that the NJPLA claim should be dismissed to the extent it is brought on behalf of the parents in their individual capacity because they do not allege that the parents suffered physical injury.  (ECF 10-1 at 22).  Plaintiffs admit that the parents did not suffer a physical injury and "do not oppose" this argument.  (ECF 20 at 14 n.1).

8

The Supreme Court of New Jersey has held that the NJPLA requires a physical injury.  Sinclair v. Merck & Co., 948 A.2d 587, 595 (N.J. 2008).  The Supreme Court explained that prior to the NJPLA, New Jersey applied the Restatement (Second) of Torts § 402A for strict liability for defective products in New Jersey, which required physical harm.  Id.  Because "[n]othing in the legislative history of the PLA suggests that the Legislature intended to eliminate that physical component," the New Jersey Supreme Court determined that liability for defective products under the NJPLA requires physical injury as well.  Id.

As Plaintiffs admit, they have not plead any physical injury suffered by the parents.  (ECF 20 at 14 n.1).  As such, the parents in their individual capacities have not sufficiently plead a NJPLA claim.  The NJPLA claim on behalf of the parents in their individual capacities will be dismissed.  With this dismissal, the parents no longer have any remaining claims in their individual capacities.  Thus, the parents may proceed in this action only on behalf of their minor children.

### C. **Punitive Damages**

Defendants assert that Plaintiffs request for punitive damages should be dismissed because Plaintiffs have not plead the requisite level of culpability to support a punitive damages award.  (10-1 at 24).  Plaintiffs counter that "[g]iven the size of this contamination event – an event stemming from products

that presumably went through numerous steps of the supply chain – it is reasonable to infer that at least one representative at Defendant-company was aware of this contamination and either contumaciously or recklessly shipped the product out anyway." (ECF 20 at 30).  Defendant responds that such allegation is not included in the complaint, and that regardless it is "unsupported and idle supposition."  (ECF 24 at 20).

Pursuant to New Jersey's Punitive Damages Act:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J.S.A. § 2A:15-5.12.

Plaintiffs' complaint does not include allegations that describe Defendant's acts or omissions that may rise to a level beyond negligence.  We therefore dismiss the request for punitive damages without prejudice.

### III. **Motion to Strike**

Defendant moves to strike Plaintiffs allegations pleading a class action.

### A. **Standard for Motion to Strike Class Allegations**

Pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  As it relates to class allegations, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  But, "[a]s a practical matter, the court's [decision] usually should be predicated on more information than the complaint itself affords . . . [and] courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis."  Oravsky v. Encompass Ins. Co., 804 F.Supp.2d 228, 240-41 (D.N.J. Apr. 28, 2011) (citing 5C Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1785.3 (explaining that the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery)).

Thus, "dismissal of class certification allegations should be ordered only 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'"  S. Broward Hosp. Dist. v. MedQuist, Inc., 516 F.Supp.2d 370, 401 (D.N.J. Mar. 30, 2007) (quoting Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. Mar.

3, 2003)).  Further, "the better course is to deny [a motion to strike class allegations] because 'the shape and form of a class action evolves only through the process of discovery.'" Id. at 401-02 (citations omitted).

**B. <u>Plaintiffs' Class Allegations</u>**

Plaintiffs describe two classes, the New Jersey Parent Class and New Jersey Student Class.  (ECF 1 at 6).  Plaintiffs include in these respective classes the parents and legal guardians of students in New Jersey school districts that ingested Guida-Seibert contaminated milk and the students that ingested the contaminated milk.  (Id.)  While the Plaintiffs named in the complaint are all parents of children and children in the Camden City School District, Plaintiffs extend the class to "other such school districts within the State of New Jersey as discovery may reveal."  (Id.).

Plaintiffs assert that their proposed class has numerosity, and that the members "could clearly range from the hundreds to the thousands."  (ECF 1 at 7).  Plaintiffs admit that they "do not know, at present, how many of the students within the Camden City School District ingested the contaminated milk, nor whether any schools from other districts were similarly affected." (Id.).  As for Plaintiffs' Brief in Opposition to the Motion to Strike, they have clarified that "[t]he number of children

affected was not 'huge'—believed at this time to be no more than 100." (ECF 21 at 5).

Plaintiffs allege that common questions predominate, specifically (1) whether defendant carelessly, recklessly, or negligently introduced a contaminant into its milk, (2) whether such contamination proximately caused harm to class members, and (3) the proper measure of damages. (ECF 1 at 7).

Plaintiffs assert that their claims are typical of the class, as all of the Plaintiff-parents are parents of children who ingested Defendant's contaminated milk, and all of the Plaintiff-children ingested Defendant's contaminated milk. (Id. at 8)

Plaintiffs aver that they "will fairly and adequately protect and represent the interest of the Classes" and that they "are represented by counsel who are experienced and competent." (Id.).

Finally, Plaintiffs allege that a class action is a superior method for the fair and efficient adjudication of the instant controversy because it is efficient and avoids unnecessary duplication of evidence, effort, and expense. (Id.). They assert that permitting the suit to proceed as a class action provides those injured "with a method for obtaining redress on claims that might not be practicable to pursue individually." (Id.).

Because we are dismissing all of the claims brought by the parents as individuals, the following discussion of the class allegations refers only to the student class.

C. **Predominance and Superiority**

Defendant argues that the nature of Plaintiffs' personal injury allegations will require an individualized analysis. (ECF 11-1 at 16-22).  Defendant points to chemical exposure cases in support of this argument, which require inquiry into the duration of chemical exposure, the nature of the exposure, pre-existing conditions, and other individual factors.  (Id. at 16-22).  Plaintiffs respond that the circumstances here are distinct from other chemical exposure cases.  (ECF 21 at 6).  For example, unlike other cases involving dangerous chemicals, the levels of exposure here are much more consistent; none of the children are believed to have consumed more than, at most, a single, half-pint carton of the tainted milk."  (Id.).

Resolution of the question of predominance and superiority requires consideration of the facts of this case.  Thus, this is not one of "those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  S. Broward Hosp. Dist., 516 F.Supp.2d at 401 (quoting Clark, 213 F.R.D. at 205 n.3).  Rather, discovery will inform the issue of predominance.  We find that striking

14

the class allegations at this stage on these grounds is premature.

**D. Fail-Safe**

Defendant next urges that this Court should strike the class allegations because Plaintiffs' class description is a fail-safe class.  (ECF 11-1 at 22).  Defendant explains that defining the class as students who ingested Defendant's milk "and who experienced physical symptoms or illness therefrom" requires a showing of causation for inclusion in the class. (ECF 11-1 at 23).  They assert that "were [Guida-Seibert] successful in proving that consumption of the Product caused no injury, such a verdict would have no preclusive effect."  (ECF 11-1 at 23-24).  Plaintiffs argue that the class is not "fail-safe," but instead the class is ascertainable through "objective criteria."  (ECF 21 at 8).  Moreover, Plaintiffs assert that "[i]n the event that the Court does find that Plaintiffs' class definitions are 'fail-safe' classes, then Plaintiffs ought to be permitted to make whatever grammatical adjustments are necessary to bring their class definitions in line with this rule."  (ECF 21 at 9).

"A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'"  Landy v. Nat. Power Sources, LLC, No. 21-00425, 2022 WL 797967, at *4 (D.N.J. Mar. 16, 2022) (quoting

Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012)).  We note that "[t]he Third Circuit has not yet determined that a fail-safe class is impermissible." Id.  That said, the issue with a "fail-safe" class definition is that "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." Id. (quoting Messner, 669 F.3d at 825).  This undermines the preclusive effect of a class action. Id. (quoting Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) ("Further, 'such a class impermissibly skirts the bar of res judicata.'").

While a Court may strike class allegations based on a fail-safe definition, the Court may also provide Plaintiffs with an opportunity to amend the class description. Martinez v. TD Bank USA, N.A., No. 15-7712, 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (striking class allegations based on a fail-safe description where "[n]o amount of additional class discovery will alter that conclusion"); Grubb v. Green Tree Servicing, LLC, No. 13-07421, 2017 WL 3191521, at *14 (D.N.J. July 27, 2017) ("Although 'fail-safe' classes are generally denied certification on these grounds, some courts, nevertheless, have allowed plaintiffs to amend their proposed class definition so that they are legally sufficient."); Merino v. Wells Fargo & Co., No. 16-7840, 2017 WL 3908670, at *6 (D.N.J. Sept. 6, 2017)

16

(quoting Messner v. Northshore Univ. HealthSystem, 669 F.3d 802,
825 (7th Cir. 2012)) ("Defining a class so as to avoid, on one
hand, being over-inclusive and, on the other hand, the fail-safe
problem is more of an art than a science. *Either problem can and
often should be solved by refining the class definition rather
than by flatly denying class certification on that basis*.").
Moreover, Courts have also explained that determination of
whether a class definition is fail-safe is better left to the
class certification stage, rather than decision on a motion to
strike.  Merino, 2017 WL 3908670, at *6 (declining to strike the
class allegations and reserving the question for the class
certification stage).  In their motion to certify class,
Plaintiffs may refine their class description.  Carney v.
Goldman, No. 15-00260, 2018 WL 2441766, at *10 (D.N.J. May 30,
2018) (quoting Kalow & Springut, LLP v. Commence Corp., 272
F.R.D. 397, 402 (D.N.J. 2011), *on reconsideration in part*, No.
07-3442, 2011 WL 3625853 (D.N.J. Aug. 15, 2011)) ("Plaintiff[s]
[are] not bound by the class definitions proposed in [their]
Amended Complaint, and the Court can consider Plaintiff[s']
revised definitions, albeit those revisions [being] made in
[their] motion for class certification.").

Assuming without deciding that the current class definition
is fail-safe, we refuse to strike the class allegations on these
grounds.  At this stage, we are not convinced that no amount of

class discovery could permit Plaintiffs to refine their definition so as to not be fail-safe.  As such, it is not appropriate to strike the class allegations as fail-safe at this time.  Plaintiffs may be able to refine their class definition. Under the facts of this case, analysis of this question is best left to the class certification stage.  See Merino, 2017 WL 3908670, at *6.  Defendant may raise this argument at the class certification stage.

### E. Rules Enabling Act

Defendant argues that this Court should strike the class allegations based on the Rules Enabling Act.  (ECF 11-1 at 26). Defendant claims that New Jersey law conflicts with Federal Rule of Civil Procedure 17(c), abridging the rights of the minor children in this action and enlarging the rights of the parents. (Id. at 31).  Defendant explains that Federal Rule of Civil Procedure 17(c) permits "a general guardian" to file suit on behalf of a minor.  (Id. at 26).  Defendant notes that under New Jersey law "a parent of a minor may be appointed guardian ad litem without court order 'upon the filing of a pleading or certificate signed by an attorney stating the parental relationship, the child's status, and, if a minor, the age, the parent's consent to act as guardian ad litem and the absence of a conflict of interest between parent and child.'"  (Id. at 28 (quoting N.J. Ct. R. 4:26-2(b)(1)).

18

Defendant's argument relies on a mischaracterization of the New Jersey Court rule.  The full section of the rule that Defendant cites states:

> *Appointment of Parent in Negligence Actions.*
> In negligence actions, unless the court
> otherwise directs, a parent of a minor shall
> be deemed to be appointed guardian ad litem
> of the child without court order upon the
> filing of a pleading or certification signed
> by an attorney stating the parental
> relationship; the child's status and age;
> the parent's consent to act as guardian ad
> litem; and the absence of a conflict of
> interest between parent and child.

N.J. Ct. R. 4:26-2(b)(1).  While Defendant's characterization suggests that a parent *may* be appointed, the Court rule states that the parent *shall* be deemed appointed.  This distinction undercuts Defendant's argument.  Both Federal Rule of Civil Procedure 7 and New Jersey Court Rule 4:26-2 permit a parent to file suit on behalf of their child.  Thus, these parents filing on behalf of their children does not violate the Rules Enabling Act as their rights are not enlarged nor are the minors' rights abridged.

In addition to whether a parent can bring a claim on behalf of their child, Defendant also points to New Jersey Court Rule 4:44-3, which requires a court in cases involving minors to "determine whether the settlement is fair and reasonable as to its amount and terms."  (ECF 11-1 at 29).  The Court must also undertake an analysis of whether the settlement is fair and

reasonable pursuant to the Federal Rule of Civil Procedure
regarding class action settlements, which requires that "[i]f
the proposal would bind class members, the court may approve it
only after a hearing and only on finding that it is fair,
reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To the
extent that Defendant's argument here is that the Court will not
be able to assess the fairness and reasonableness without an
individualized assessment of each plaintiff, such argument
relies on the specific facts of this case and as such this Court
will permit class discovery before deciding this point.

Although we have concluded that Defendant's argument that
class certification violates the Rules Enabling Act is unfounded
based on the text of the New Jersey and Federal Rules, we now
also address the caselaw that Defendant cites.

Defendant relies on a Michigan case and comparison to
Michigan law in support of its analysis that class certification
violates the Rules Enabling Act.  (ECF 11-1 at 29).  In support
of its persuasiveness, Defendant argues that "like New Jersey,
Michigan required individual scrutiny on a parent's ability to
bring and settle claims on behalf of his or her minor child."
(Id.).  However, New Jersey Court Rule 4:26-2 presumes that a
guardian may bring a suit on behalf of their child unless the
Court otherwise states.  This is distinct from the Michigan law
where "not even parents may bring a minor's claim on the minor's

behalf without a court first formally appointing the parent as the minor's representative." In re Flint Water Cases, 558 F. Supp. 3d 459, 494 (E.D. Mich. 2021). Michigan law is also stricter than New Jersey in its approval of personal injury settlements for minors. While New Jersey law requires the Court to determine that "the settlement is fair and reasonable as to its amount and terms" New Jersey Court Rule 4:44-3, Michigan law specifies that in making such determination "[f]or a claim for damages due to personal injury, the minor 'shall appear in court personally to allow the judge an opportunity to observe the nature of the injury unless, for good cause, the judge excuses the minor's [ ] presence.' Mich. Ct. R. 2.420(B)(1)." In re Flint Water Cases, 558 F. Supp. 3d 459, 494 (E.D. Mich. 2021). Defendant has not pointed to any such requirement in New Jersey nor is the Court aware of any.

The New Jersey cases that Defendant cites discuss a parent's ability to release claims on behalf of their child or settle claims on behalf of their child without court approval. Colfer v. Royal Globe Ins. Co., 519 A.2d 893, 894 (N.J. Super. App. Div. 1986) (holding that a settlement of a UMI claim made by parents on behalf of a minor child was not binding on the child where the parents signed a release and indemnity agreement, but the settlement was not submitted for court approval); Fitzgerald v. Newark Morning Ledger Co., 267 A.2d

557, 559 (N.J. Super. Law. Div. 1970) (finding a release and indemnity agreement entered by a parent on behalf of their child void as against public policy as "[t]he agreement placed the father's personal interest in a position antagonistic to his duty toward the infant."); Hojnowski v. Vans Skate Park, 901 A.2d 381, 389-90 (N.J. 2006) (holding that "a parent's execution of a pre-injury release of a minor's future tort claims arising out of the use of a commercial recreational facility is unenforceable."); Loesch, to Use of Harleysville Mut. Cas. Co. v. Vassiliades, 86 A.2d 14, 16 (N.J. Super. App. Div. 1952) (finding an indemnity clause in an out of court settlement agreement void as against public policy); Cumberland Cnty. Welfare Bd. v. Rodriquez, 365 A.2d 723, 731 (N.J. Super. Law. Div. 1976) (denying the welfare board's request to release personal injury proceeds held on behalf of a minor child for future surgery to pay for present expenses for the child or repay the welfare board).

Each of these cases are distinct from the procedural posture here.  The rule underlying each of these cases is that under New Jersey Law "[n]o binding compromise or settlement of the claim or cause of action of an infant may be made, even by a judicially appointed guardian, except by leave of court." Loesch, to Use of Harleysville Mut. Cas. Co., 86 A.2d at 15 (quoting Rubin v. Trowbridge Sign Co., 99 N.J.L. 216, 122 A. 763

(E. & A. 1923)).  However, unlike each of Defendant's examples, here there is Court oversight.

Consistent with the New Jersey caselaw that Defendant cites, this Court has the authority to comply with the requirements of the New Jersey Court rules requiring judicial approval of settlements on behalf of minor children.  While we will not strike the class allegations on these grounds at this time, the Court acknowledges that there are public policy considerations here that relate to binding a minor to a settlement.[1]  Thus, the Court reserves final determination of whether this will pose an issue with respect to certification of the class, with consideration of the predominance or superiority requirements of a class action, at the class certification stage.

<u>**CONCLUSION**</u>

For the reasons expressed above, Defendant's Partial Motion to Dismiss the complaint will be granted and Defendant's motion to strike will be denied.  The Negligence (Count One) and Negligent Infliction of Emotional Distress (Count Three) claims will be hereby dismissed against all defendants.  The New Jersey Products Liability Act claim (Count Two) on behalf of the

---

[1] We note that certain concerns are alleviated by the dismissal of the parents' individual claims, as this alleviates concern of conflict between parents' individual interests in the litigation and the minors' interests.

parents in their individual capacities will be dismissed.  The New Jersey Products Liability Act claim (Count Two) brought on behalf of the minor children will proceed as the only remaining claim.

An appropriate order will be entered.


Date: February 21, 2023            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.